UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MARK SMITH, | : | Case No. 3:26-CV-606 |
| | : | |
| Plaintiff, | : | JUDGE JAMES R. KNEPP II |
| | : | |
| v. | : | MAGISTRATE JUDGE DARRELL |
| | : | A. CLAY |
| | : | |
| HON. ELIZABETH SCHULLER, et al. | : | **DEFENDANT ELIZABETH** |
| | : | **SCHULLER'S MEMORANDUM IN** |
| Defendants. | : | **SUPPORT OF MOTION TO** |
| | : | **DISMISS** |

## I.      Introduction

*Pro se* Plaintiff Mark Smith ("Smith") brings claims against Judge Elizabeth Schuller of the Napoleon Municipal Court ("Schuller"), and others, stemming from a traffic action in the Napoleon Municipal Court – Case No. TRD24003948A-C – over which Judge Schuller presided (the "Underlying Case"). A true and accurate copy of the docket from Case No. TRD24003948A-C is attached hereto as Exhibit A.[1] In the Underlying Case, Judge Schuller also found Smith in contempt of court, and when Judge Schuller ordered him detained, he engaged in altercation with the Sheriff's deputies, resulting in charges of disorderly conduct, disturbing a law enforcement officer, and resisting arrest, which were filed with the Napoleon Municipal Court as Case No. CRB2400102A-C. A true and accurate copy of the docket from Case No. CRB2400102A-C is attached hereto as Exhibit B.

In his Complaint, Smith alleges that on March 14, 2024, he was driving a vehicle registered to his life partner and was pulled over by Henry County Sheriff's Deputy Ryan

---

[1] This Court is entitled to take judicial notice of facts appearing on a state court online docket. *See Lynch v. Leis*, 382 F. 3d 642, 647, n.5 (6th Cir. 2004).

1

Axle for excessive speeding (Complaint, Doc. 1, PageID#: 4, ¶3). Deputy Axle issued Smith citations for speeding, no operator's license, and suspensions of operator's license (Id., ¶4). Smith alleges that during the stop, he provided Deputy Axle with documentation of his American tribal identification, automobile registration, and proof of insurance, but that Deputy Axle went on a "fishing expedition" related to Smith's affiliation with his tribal organization, which delayed the stop for more than 40 minutes (Id., PageID#: 4-5, ¶¶ 5-8).

Smith then alleges he was issued a summons to appear in court on March 18, 2024, and that Deputy Axle told him the failure to appear would result in the issuance of a warrant for his arrest (Id., ¶10). Smith alleges he appeared in the Napoleon Municipal Court on March 18, 2024, "under duress and under threat of arrest" (Id., ¶ 11).

During the March 18, 2024, hearing, Smith alleges that Judge Schuller began "arguing" with him and threatening him with jail time for "exercising his First Amendment association and affiliation, and his right to free speech in a non-threatening manner." (Id., ¶12).  He also alleges Judge Schuller stated she would "issue a warrant for not appearing" while he was standing in the courtroom, which he alleges he knew was not proper and said so, after which Judge Schuller said she could "do whatever she wanted to" (Id., PageID#: 6, ¶12).

Smith next alleges that while he was sorting through legal materials, he was assaulted by Deputy Axle and Deputy/Bailiff Sean Walker with an "unprovoked attack from a head nod by the Judge," and that the deputies told him Judge Schuller had issued a warrant for his arrest (Id., ¶14). Smith then states he was further tased and physically assaulted, transferred to a local hospital, and then booked into jail (Id., PageID#: 6-7, ¶¶ 16-20).

Later in his Complaint, Smith alleges that Judge Schuller had issued a warrant for his arrest prior to the March 18, 2024, hearing, which was withdrawn during the hearing, but that he was still assaulted and subsequently arrested during the hearing (Id., PageID#: 10-11, ¶¶ 44-54).

Smith then filed the instant Complaint on March 13, 2026, bringing claims against Judge Schuller pursuant to 42 U.S.C 1983 for violations of his Fourth and Fourteenth Amendment rights, as well as a claim for conspiracy under 42 U.S.C. § 1985 (Id., PageID#: 13-18). He seeks declaratory relief, injunctive relief, and compensatory and punitive damages. (Id., PageID# 21).

## II.    <u>Analysis</u>

Rule 12 of the Federal Rules of Civil Procedure authorizes this Court to dismiss claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012), citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.,* quoting Fed. R. Civ. P. 8(a)(2). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.,* quoting *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed. 2d 1081 (2007); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

It is well-settled that a document filed *pro se* is "to be liberally construed" and that a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers[.]" *Erickson,* 551 U.S. at 94, quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976). The Sixth Circuit has also recognized, however, that this liberal construction does not come at the expense of "abrogat[ing] basic pleading essentials in *pro se* suits." *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted).

Smith's claims against Judge Schuller should be dismissed for the following reasons: (1) this Court lacks jurisdiction to review claims challenging state court decisions; (2) Judge Schuller is entitled to absolute judicial immunity from Smith's claims for monetary and injunctive relief; (3) Smith is not entitled to declaratory relief against Judge Schuller; and (4) Judge Schuller is entitled to Eleventh Amendment sovereign immunity for any official capacity claims.

**B.      Under the *Rooker-Feldman* doctrine, this Court does not have jurisdiction to review Smith's claims against Judge Schuller to the extent he is challenging judicial determinations previously made by the Judge.**

As stated by the Sixth Circuit, "[t]he *Rooker-Feldman* doctrine prevents a federal district from exercising jurisdiction over a claim alleging error in a state court decision. Federal courts have no jurisdiction over challenges to state court decisions, even if the challenges allege that the state court [actors] acted unconstitutionally." *Luber v. Sprague,* 90 Fed. Appx. 908, 910 (6th Cir. 2004)(*internal citation omitted).* In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280 (2005), the U.S. Supreme Court held "the *Rooker-Feldman* doctrine…is confined to cases brought by state-court losers complaining of injuries cause by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

4

Here, the Complaint takes issue with Judge Schuller's decisions made in the Underlying Case, specifically her decision to find Smith in contempt and order his incarceration. The *Rooker-Feldman* doctrine precludes the federal district court from evaluating such claims, premised on and intertwined with state court proceedings, even where the claims are couched in constitutional terms:

> The Sixth Circuit Court of Appeals has explained that under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction to...evaluate constitutional claims that are inextricably intertwined with a state court's decision rendered in a judicial proceeding. Further, the Sixth Circuit has stated that a party cannot escape *Rooker-Feldman* by raising a new constitutional theory in federal court unless the party lacks a realistic opportunity to fully litigate the constitutional claim in the state court proceeding.

*Watterson v. Milligan*, S.D. Ohio No. 2:06-cv-809, 2006 U.S. Dist. LEXIS 72183 at *8-9 (Oct. 3, 2006) (dismissing complaint). The *Rooker-Feldman* doctrine applies to both interlocutory orders and judgments of lower state courts. *Pieper v. Am. Arbitration Ass'n,* 336 F.3d 458, fn. 5 (6th Cir. 2003).

In the case *sub judice*, Smith's claims against Judge Schuller are entirely based on criticism of decisions made and/or orders entered in the trial court. Like the plaintiff in *Watterson*, Smith's constitutional claims are "inextricably intertwined" with the Underlying Case, and he has not and cannot demonstrate he lacked a meaningful opportunity to litigate those claims in the state courts. Regardless of the fact that his case is styled as an independent action, it is essentially a quasi-appeal; it attempts to have this Court review the conduct of Judge Schuller and others and deem their conduct, and the Judge's decisions, improper. The only appropriate place to raise such contentions is in the Ohio appellate courts, not as a collateral attack in this Court.

To the extent Schuller essentially seeks for this Court to apply appellate jurisdiction over the state court proceedings, the *Rooker-Feldman* doctrine precludes this Court from exercising jurisdiction over this matter, and Smith's claims against Judge Schuller must be dismissed.

**C.      Judge Schuller is entitled to judicial immunity from civil liability.**

It has long been established that judges are absolutely immune from individual liability for monetary relief for the performance of any "judicial act" unless there is a "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978); *King v. Love*, 766 F.2d 962, 966-67 (6th Cir.), *cert. denied*, 474 U.S. 971 (1985). This immunity will be lost only where a judge "knows he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction[.]" *Schorle v. Greenhills*, 524 F. Supp. 821, 828 (S.D. Ohio 1981). Such far-reaching protection is justified by a "long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (*quoting Antoine v. Byers & Anderson*, 508 U.S. 429, 435 (1993)).

The Supreme Court and Sixth Circuit have renewed their support for an expansive reading of absolute judicial immunity. *See, Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 288-89 (1991) (immunity applicable to claims that a judge ordered court officers to use excessive force to drag an attorney into his courtroom); *Cooper v. Parrish,* 203 F.3d 937, 945-46 (6th Cir. 2000) (immunity applicable to claims a judge improperly engaged in *ex parte* contact with prosecutors and gave them legal advice on how to improve their case); *Barnes,*105 F.3d 1111 (immunity applicable to claims that a judge aided prosecutors in the preparation of a complaint against a criminal defendant in his courtroom). Thus, as one

court noted, the "law has been settled for centuries that a judge may not be attacked for exercising his judicial authority, even if done improperly."[2] *Dean v. Shirer*, 547 F.2d 227, 230-32 (4th Cir. 1976), *citing Mullins v. Oakley*, 437 F.2d 1217, 1218 (4th Cir. 1971) (immunity applies to a judge's utterance of vile and slanderous statements to an attorney). The courts have further unequivocally held judicial immunity extends to claims a judge conspired with others to deprive a plaintiff of his property and rights. *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986); *Billingsley v. Kyser*, 691 F.2d 388, 389 (8th Cir. 1982).

Judge Schuller's immunity can only be overcome in two situations:

1. If she was acting in the complete absence of all jurisdiction, or

2. If her challenged actions were non-judicial.

*Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116.

### 1. Judge Schuller's acts were within the general power of the court.

As long as Judge Schuller was acting within her jurisdiction, she is immune. In *Stump,* the United States Supreme Court held a judge is subject to liability only if he acted in the clear absence of *all jurisdiction. Stump, supra,* at 356-57. And the scope of . . . [a] judge's jurisdiction must be construed broadly where the issue is . . . immunity . . ." *Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir. 1994), *quoting Stump at* 356. Even "[w]here a court has *some* subject-matter jurisdiction, there is sufficient jurisdiction for

---

[2] Judicial immunity extends to cases in which judges acted maliciously (*e.g., Pierson v. Ray*, 386 U.S. 547, 554 (1967)). It extends to cases in which a trial judge altered a transcript (*e.g., Eades v. Sterlinske*, 810 F.2d 723 (7th Cir.), *cert. denied*, 484 U.S. 847 (1987)); set allegedly inappropriate bond amounts (*King*, 766 F.2d at 968); failed to conduct a speedy trial (*Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976), *cert. denied*, 431 U.S. 905 (1977)); maliciously and for improper reasons initiated criminal proceedings against a person before him (*Harris v. Deveaux*, 780 F.2d 911, 915 (11th Cir. 1986)); and ordered a person detained for mental examination (*Turney v. O'Toole*, 898 F.2d 1470 (10th Cir. 1990)). The courts have unequivocally held judicial immunity extends to claims a judge conspired with others to deprive a plaintiff of his property and rights. *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986); *Billingsley v. Kyser*, 691 F.2d 388, 389 (8th Cir. 1982).

immunity purposes." *Depiero v. City of Macedonia,* 180 F.3d 770, 785 (6th Cir. 1999)

(*citing Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985)). The court in *Doe v.*

*McFaul*, 599 F. Supp. 1421, 1431 (D. Ohio 1984) added:

> [A] judicial officer does not act in the clear absence of all jurisdiction if he merely acts in excess of his authority . . .. The Supreme Court has held, for instance, that if a judicial officer exceeds his authority in a type of case that he normally has jurisdiction to hear, the officer has not acted in the clear absence of all jurisdiction.

*See also Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

The distinction between acts performed in *excess* of jurisdiction and those done in

the absence of *all* jurisdiction is this: A judge acts in excess of jurisdiction but indeed has

jurisdiction for immunity purposes if the act complained of is within his general power of

jurisdiction but is not authorized because of certain circumstances. *Duty*, 42 F.3d at 462.

Here, Smith alleges that Judge Schuller made errors in the adjudication of the

Underlying Case. Even if Judge Schuller somehow exceeded her jurisdiction, "any error

in the exercise of [a court's] jurisdiction renders the court's judgment voidable, not void,"

and a voidable judgment generally "may be set aside only if successfully challenged on

direct appeal." *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶

26.

The determinative fact is that the Napoleon Municipal Court, established pursuant

to Ohio Revised Code § 1901.01, had proper jurisdiction over the Underlying Case. R.C.

1901.20 (A)(1) states:

> The municipal court has jurisdiction to hear misdemeanor cases committed within its territory and has jurisdiction over the violation of any ordinance of any municipal corporation within its territory, including exclusive jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance.

Judge Schuller was therefore clearly acting within her jurisdiction by presiding over the Underlying Case. This matter is not appropriate for challenging that jurisdiction, and her immunity cannot be contested on this basis.

### 2. Judge Schuller's acts were quintessentially judicial.

The remaining inquiry, then, is whether Judge Schuller's actions were "judicial acts," and thus protected by her immunity. A "judicial act" has been defined as a function normally performed by a judge in a situation where the parties have dealt with the judge in a judicial capacity. *Stump,* 435 U.S. at 362*; King v. Love*, 766 F.2d 962 (6th Cir. 1985). Smith does not allege he dealt with Judge Schuller in any capacity other than acting as a municipal court judge.

Here, Smith identifies two actions taken by Judge Schuller he alleges violated his rights: (1) issuing arrest warrants; and (2) ordering his arrest during a court appearance.

Regarding the first action, "[i]ssuing an arrest warrant is a judicial act." *Norfleet v. Renner*, 924 F.3d 317, 320 (6th Cir. 2019); *see also DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999) ("[i]t is well-settled in this Circuit that the issuance of an arrest warrant is a judicial act for judicial immunity purposes"); *Jones v. Fridell*, 2026 U.S. Dist. LEXIS 53332, *6 (N.D. Ohio March 16, 2026) (accord). Even if the warrant(s) were issued in error, judicial immunity would still apply as "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 362.

As to the second action, Ohio law provides judges with authority to control their courtrooms. The contempt power can be found in R.C. § 2705.01, which provides: "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge so as to obstruct the administration of justice."

See also *King v. Love*, 766 F.2d 962, 966 (6th Cir. 1985) ("[J]ailing persons for contempt of court is a function normally performed by judges. . . ."); *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) ("A judge acts in his judicial capacity when he exercises control over his courtroom.").

Smith further references violations of his Fourth Amendment rights related to the officers subduing him during the incident in the courtroom, but does not allege Judge Schuller physically participated in this act. To the extent Judge Schuller ordered Smith's seizure, Judge Schuller is likewise entitled to judicial immunity. For example, in *Mireles*, an attorney brought a claim under § 1983 against a judge, alleging that after the attorney failed to appear in court for a scheduled hearing, the judge, angered by the attorney's absence, ordered two police officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom." *Mireles*, 502 U.S. at 10. The officers allegedly used excessive force to "violently seize[] plaintiff and remove[] him from another courtroom . . . called him vulgar and offensive names," and "slammed him through the doors and swinging gates" into the judge's courtroom. *Id.* The Supreme Court held that, even taking the plaintiff's allegations as true, as required on a motion to dismiss, the acts complained of were judicial. According to the *Mireles* Court, "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Id.* at 12. Because the plaintiff "was called into the courtroom for purposes of a pending case" he was "dealing with Judge Mireles in the judge's judicial capacity." See also *See Martin v. Charles,* 2019 U.S. Dist. LEXIS 158827 (E.D. Mich 2019), citing *Arnold v. County of El Dorado*, 2011 U.S. Dist. LEXIS 26475, *14, adopted by 2011 U.S. Dist. LEXIS 103866 (E.D. Cal. 2011) (noting the distinction between a court officer's carrying

10

out a facially valid judge's order from the situation where an order is carried out in a manner not authorized by the order itself).

Thus, in the instant case, to the extent the deputies were acting on a court order to take Smith into custody based upon the finding of contempt, this was a judicial act for which Judge Schuller is entitled to absolute immunity.

Judge Schuller's actual involvement in the Underlying Case is limited to issuing orders/warrants and presiding over the courtroom, and there are no allegations Smith dealt with Judge Schuller in any capacity other than acting as a municipal court judge during the Underlying Case.

Because Judge Schuller's actions in the Underlying Case were within the jurisdiction of the Napoleon Municipal Court and the acts upon which the Complaint is based were judicial in nature, Judge Schuller is entitled to absolute judicial immunity as to monetary relief.

### D.     Judge Schuller's Absolute Judicial Immunity Precludes Claims for Injunctive Relief.

Like claims for money damages, absolute judicial immunity shields judges from claims for injunctive relief as well. The Federal Court's Improvement Act of 1996 (Public Law 104-317, October 19, 1996) amended § 1983 to provide a judge may not be enjoined for any act or omission taken in his or her judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable.  42 U.S.C. § 1983.  Because amended § 1983 specifically reverses *Pulliam v. Allen*, 406 U.S. 522 (1984), a judge's absolute judicial immunity now bars any suit for injunctive relief that fails these two exceptions, even when the claim seeks only prospective injunctive relief.

11

Another amendment in this act changed 42 U.S.C. § 1988 – the provision typically entitling successful § 1983 claimants to attorney's fees – to exclude fee awards in any action brought against a judicial officer for an act or omission taken in his or her judicial capacity unless that action was clearly in excess of such officer's jurisdiction.  Courts have interpreted this standard to mean that, unless a judge acts in the clear absence of all jurisdiction, he or she will not be assessed fees in claims for monetary, injunctive, or declaratory relief.  *See, e.g., Carr v. Village of New York Mills*, 1998 U.S. Dist. LEXIS 5526, *20 (D.N.Y. 1998).

Because there is no allegation Judge Schuller violated a declaratory decree and because declaratory relief is theoretically available (although inappropriate in this case; *see part* II.E., below), absolute judicial immunity bars Smith's request for injunctive relief pursuant to 42 U.S.C. § 1983.

### E.    Smith's claim against Judge Schuller seeking declaratory relief is futile because there is not a case or controversy between the two.

Smith also seeks declaratory relief against Judge Schuller, however, Smith's attempt to get declaratory relief against Judge Schuller must fail. While declaratory relief is theoretically available against Judge Schuller, it is inappropriate here because, as a litigant and presiding judge, there is no case or controversy between Smith and Judge Schuller as a matter of law. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)(A "controversy" must exist between litigants for a case to proceed.); *see also In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 22 (1st Cir. 1982) (naming judges as defendants when they act only as neutral arbiters fails to state a claim for which relief can be granted).

12

"[I]t is well settled that declaratory judgment is not a proper vehicle for determining whether rights that were previously adjudicated were properly adjudicated." *Davis v. Miraldi*, 2016-Ohio-868, 62 N.E.3d 572, ¶ 6 (9th Dist.), citing *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, P 44, 7 N.E.3d 1188. "A judge is not a party litigant in a proceeding in which he acts as judge and a litigant's disagreement with his decisions or dissatisfaction with his judicial performance does not give rise to a justiciable controversy between the complaining litigant and the judge." *Id.*, citing *Carter v. Walters*, 3d Dist. Paulding No. 11-88-23, 1990 Ohio App. LEXIS 1205, 1990 WL 35410, *2 (Mar. 22, 1990). "For direct and collateral attacks alike, declaratory judgment is simply not a part of the criminal appellate or postconviction review process." *Id.*, citing *Lingo*, 138 Ohio St.3d, 2014-Ohio-1052,  at ¶44 (indicating that a declaratory judgment action cannot be used as a substitute for a petition for post-conviction relief, a petition for habeas corpus, or a motion to vacate).

In this case, Judge Schuller is not Smith's adversary; she simply presided over the Underlying Case. Judge Schuller acted solely in her adjudicatory role. Consequently, Schuller is not entitled to have any declaration issued against Judge Schuller based on how she ruled or operated her courtroom; his claim for declaratory relief against Judge Schuller therefore fails as a matter of law.

**F.      Judge Schuller has sovereign immunity for Smith's official capacity claim pled against her.**

To the extent the Complaint also brings claims against Judge Schuller in her official capacity, Smith's claim fails because Judge Schuller is entitled to sovereign immunity under the Eleventh Amendment. Claims against Judge Schuller in her official capacity are claims against the municipal court she represents. As set forth below, the Napoleon

Municipal Court is an arm of the State; therefore, the claims against Judge Schuller in her official capacity are precluded by sovereign immunity.

Unless a State consents to be sued, it enjoys immunity from private lawsuits seeking damages. *Ermold v. Davis*, 936 F.3d 429, 433, 2019 U.S. App. LEXIS 25302, citing U.S. Const. amend. XI; *Crabbs v. Scott*, 786 F.3d 426, 428 (6th Cir. 2015). And because lawsuits against state officials in their official capacities equate to lawsuits against the State itself, sovereign immunity shields state officials as well. *Id.*, citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Ohio law consistently treats an official capacity claim by or against an official of an Ohio court as a suit against the state—not by or against the court he or she serves. See, *Ward v. City of Norwalk,* 640 Fed. Appx. 462, 464-465 (6th Cir. 2016); *Hoskins v. Hamilton County Juvenile Court,* S.D. Ohio No. 1:18-cv-305, 2019 U.S. Dist. LEXIS 135631, at * 19 (Aug. 12, 2019)(finding an official capacity claim against a Juvenile Court judge in his official capacity is a claim against the State, meriting sovereign immunity when raised in federal court); *see also Godfrey v. Hamilton Cty. Juv. Ct.*, S.D. Ohio No. 1:18-cv-663, 2019 U.S. Dist. LEXIS 119930 (Jul. 18, 2019)(Juvenile Court judge being sued in his official capacity is protected by sovereign immunity); *Hunter v. Hamilton County*, S.D. Ohio No. 1:15-cv-540, 2016 WL 11463840, 2016 U.S. Dist. LEXIS 125623, at *8, 18 (May 5, 2016) (Report and Recommendation)("[A] suit against Judge Myers in her official capacity is a suit against the state of Ohio."), *adopted* at 2016 U.S. Dist. LEXIS 125621, 2016 WL 4836810 (S.D. Ohio Sept. 15, 2016)(*citing Hafer v. Melo*, 502 U.S. 21, 25-26 (1991); *Smith v. Grady,* 960 F.Supp.2d 735, 752 (S.D. Ohio 2013).

Smith's claims against Judge Schuller, in her official capacity, are claims against an arm of the state—the Napoleon Municipal Court—which is the same as a claim against

14

the state itself; therefore, Judge Schuller is entitled to sovereign immunity and all claims for monetary relief against her must be dismissed.

### 1. The *Ex parte Young* exception to sovereign immunity does not apply to Schuller's claims for relief.

In *Ex parte Young*, the United States Supreme Court held that the Eleventh Amendment did not bar a suit alleged against a state official, in his official capacity, for prospective injunctive relief, thereby carving out a narrow exception to sovereign immunity. *Ex parte Young*, 209 U.S. 123, 150-156, 28 S. Ct. 441, 52 L. Ed. 714 (1908). In order for this exception to apply, a plaintiff's claim must "seek prospective relief to end a continuing violation of federal law." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). Claims seeking retroactive, monetary relief are barred by the Eleventh Amendment and not subject to the *Ex parte Young* exception. *Id.*

To evaluate whether the *Ex parte Young* doctrine applies, the Court need only look to the allegations in the complaint, not the merits of the claim. *Bedford v. Kasich*, 2011 U.S. Dist. LEXIS 51903 at *24 (S.D. Ohio 2011) (citing *Verizon MD. Inc. v. United States*, 535 U.S. 635, 646, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2001)).

If a plaintiff has pled a violation of federal law, whether a Court has jurisdiction to consider a plaintiff's constitutional claims under *Ex parte Young* depends on whether the claim: (1) is asserted against a state official in her official capacity; (2) seeks prospective injunctive or declaratory relief and (3) concerns a continuing violation of federal law. If a plaintiff fails to meet any of these three requirements, the *Ex parte Young* exception will not apply and the general rule—sovereign immunity—will divest the Court of jurisdiction to consider their due process claim. *Derezic v. Ohio Dep't of Educ.,* U.S. Dist. LEXIS 118163, *11-12 (S.D. Ohio 2014). Here, Smith's claims for monetary relief clearly do not

satisfy the *Ex parte Young* exception and are thusly barred. The Court must then look to the remaining requests for relief to determine whether they, too, are barred by the Judge's sovereign immunity.

Smith seeks injunctive relief in the form of an order to permanently enjoin defendants, "from unlawfully detaining and seizing persons and motor vehicles, in retaliation for exercising constitutionally protected First Amended freedoms" (Complaint, Doc. 1, PageID#: 11).

Frist, to the extent Smith, in essence, asks the Court to instruct the defendants to "obey the law," this is precisely the type of sovereign invasion that "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Derezic* at *11, *citing Pennhurst*, 465 U.S., at 106; *see also, EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013) ("An injunction that does no more than order a defeated litigant to obey the law raises several concerns. One is overbreadth. An obey-the-law injunction departs from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation").

Second, Smith's request appears to be seeking injunctive relief on behalf of other "persons" who might be subject to traffic citations.  To the extent that Smith seeks injunctive relief on behalf of others, it is well settled that he lacks standing to do so. *See, Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

To establish individual standing, a plaintiff has the burden of proving that they have suffered "injury in fact." *Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 584 (W.D. Ky. 2012). Particularly relevant, in cases dealing with declaratory and injunctive

16

relief, "a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001).

Further, the Supreme Court has noted, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102. To be sure, past wrongs might be "evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* However, "where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Grendell*, 252 F.3d at 833 (citing *Lyons*, 461 U.S. at 109). By way of example, in *Lyons*, the plaintiff sought to enjoin the Los Angeles Police Department ("L.A.P.D.") from using a choke-hold during arrests that had caused several deaths. *Lyons*, 461 U.S. at 97-98. The Supreme Court, recognizing that the L.A.P.D. had previously used a choke-hold against the plaintiff, held that the future threat of injury was still too speculative to confer standing for injunctive relief. The Court explained:

> That Lyons may have been illegally choked by the police . . . while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation . . . .

*Id.* at 105.

Given the precedent on this point, Smith's attempt to establish entitlement to relief based on past exposure to an alleged wrong does not establish the requisite injury in fact to permit him to seek declaratory and injunctive relief against Judge Schuller, or any other defendant. Smith fails to show that *he* is subject to "actual present  harm or a significant

17

possibility of future harm"—a necessary element to seek declaratory and injunctive relief. *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). As with the plaintiff in *Lyons*, the threat of Smith's future injury is purely conjectural, resting on a string of actions the occurrence of which is speculative, and he lacks standing to present claims on behalf of others.

Accordingly, the *Ex parte Young* exception does not apply to Smith's claims, and the Eleventh Amendment bars the Court from considering the claims.

## III.    Conclusion

For the foregoing reasons, the Honorable Judge Elizabeth Schuller respectfully requests all claims against her be dismissed, with prejudice.

Respectfully submitted,

MONTGOMERY JONSON LLP

*/s/ Cooper D. Bowen*
COOPER D. BOWEN (0093054)
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
cbowen@mojolaw.com / 513.768.5242

*Counsel for Defendant Judge Elizabeth Schuller*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of July, 2025, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I also certify that the foregoing was served by Ordinary U.S. Mail upon the following:

Mark Smith
11028 US 20
Lyons, OH 43533
*Plaintiff*

*/s/ Cooper D. Bowen*
COOPER D. BOWEN (0093054)