**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MARK SMITH, | Case No. 3:26-cv-00606 |
| Plaintiff, | Judge James R. Knepp II |
| v. | |
| ELIZABETH J. SCHULLER, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS FILED ON BEHALF OF DEFENDANTS RYAN AXLE, SEAN WALKER, MARC RUSKEY, JACOB TREJO, EDWARD LEGG, MELISSA K. COTTER, CITY OF NAPOLEON AND HENRY COUNTY**

Teresa L. Grigsby (0030401)
Jennifer A. McHugh (0084842)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, OH  43604
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
tgrigsby@snlaw.com
jmchugh@snlaw.com

*Attorneys for Defendants Ryan Axle, Sean Walker, Marc Ruskey, Jacob Trejo, Edward Legg, Melissa K. Cotter,  City of Napoleon and Henry County*

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES..............................................................................................................iii

A.    Factual Background....................................................................................................1

    1.    The March 14, 2026 Traffic Stop.......................................................................1

    2.    The Court Appearance at Napoleon Municipal Court on March 18, 2024..............5

    3.    The Effort to Place Plaintiff in Custody...................................................................7

B.    The Legal Standard Applicable to this Motion .......................................................9

C.    Argument in Support of Rule 12 Dismissal of the Individual Capacity Claims ................9

    1.    No valid individual capacity claim exists arising from
March 14, 2024 traffic stop.....................................................................................10

    2.    No valid individual capacity claim exists from the events related to Plaintiff's
March 18, 2024 court appearance ...........................................................................13

        a.    Plaintiff was legally seized by Deputy Axle, Bailiff Walker and Officer
Trejo at the Napoleon Municipal Court.......................................................13

            i.    The seizure was valid because there was probable cause to believe
Plaintiff committed criminal offenses and because of the
subsequent bench warrant for arrest .............................................14

            ii.    The seizure was valid because of the contempt order....................17

        b.    Clerk Cotter is entitled to absolute quasi-judicial immunity for the
Fourth Amendment seizure claims .............................................................18

        c.    Defendants Walker and Axle are entitled to qualified immunity on
the Fourth Amendment excessive force claim............................................19

            i.    Hands-on contact to enable handcuffing.......................................21

            ii.    Taser use .......................................................................................23

        d.    The Conspiracy claim asserted under 42 U.S.C. 1985(2) is invalid..........24

D.    Argument in Support of Dismissal of the Official Capacity/*Monell* Claims ...................26

i

E.    Conclusion ......................................................................................................28

ii

**TABLE OF AUTHORITIES**

**PAGE**

**CASES**

*Akima v. Peca*, 85 F.4th 416 (6th Cir. 2023) ...................................................................14

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................9

*Bell v. City of Southfield*, 37 F.4th 362 (6th Cir. 2022). ...................................................9

*Brown v. Hamilton Cnty.*, No. 1:19-cv-969, 2020 U.S. Dist. LEXIS 258551,
2020 WL 12178001 ........................................................................................................13

*Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002)......................................................21, 22

*Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) .....................................................................18

*Caie v. W. Bloomfield Twp.*, 485 Fed.Appx. 92 (6th Cir. 2012).......................................21

*Chiaverini v. City of Napoleon,* 602 U.S. 556 (2024)......................................................28

*Chiaverini v. City of Napoleon*, No. 3:17-cv-2527, 2021 U.S. Dist. LEXIS 189323
(N.D. Ohio Sep. 30, 2021) ..............................................................................................27

*Chiaverini v. City of Napoleon*, No. 21-3996, 2023 U.S. App. LEXIS 865
 (6th Cir. Jan. 11, 2023) ..................................................................................................27

*Crocker ex rel. Est. of Tarzwell v. County of Macomb*, 119 F. App'x 718 (6th Cir. 2005) ...........27

*Delaware* v. *Prouse*, 440 U. S. 648 (1979).....................................................................11

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ......................................................................14

*Dunn v. Post*, No. 21-1412, 2022 U.S. App. LEXIS 2616 (6th Cir. Jan. 27, 2022) ......................12

*Earnest v. Genesee Cnty.*, 841 F. App'x 957 (6th Cir. 2021) ..........................................21

*Easterling v. Rice*, No. 3:15-CV-257, 2016 U.S. Dist. LEXIS 21062
(S.D. Ohio Feb. 22, 2016)................................................................................................23

*Estate of Fleenor v. Ottawa Cnty.*, 170 Ohio St. 3d 38, 2022-Ohio-3581....................................26

iii

*Foster v. Walsh*, 864 F.2d 416 (6th Cir. 1988) ...............................................................19

*Fox v. Desoto*, 489 F.3d 227 (6th Cir. 2007) .................................................................14

*Gallagher v. Lane*, 75 F. App'x 440 (6th Cir. 2003)........................................................19

*Germany v. Watkins,* No. 23-1812, 2024 U.S. App. LEXIS 11281 (6th Cir. May 8, 2024) .........14

*Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012)....................................................21

*Graham v. Connor,* 490 U.S. 386 (1989) .........................................................13, 19, 20

*Gipson v. Hamilton Cty. Common Pleas Court*, No. 1:22-cv-764, 2023 U.S. Dist. LEXIS 208902 (S.D. Ohio Nov. 20, 2023)...................................................................18

*Hall v. Navarre*, 118 F.4th 749 (6th Cir. 2024) ...............................................................26

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ......................................................................9

*Harris v. Suter*, 3 F. App'x 365 (6th Cir. 2001)................................................................19

*Hartman v. Thompson*, 931 F.3d 471 (6th Cir. 2019) .....................................................14

*Heike v. Guevara*, 519 F. App'x 911 (6th Cir. 2013)........................................................13

*Hill v. Pell*, No. 24-3268, 2025 U.S. App. LEXIS 1299 (6th Cir. Jan. 21, 2025) ........................25

*Howse v. Hodous*, 953 F.3d 402 (6th Cir. 2020))............................................................13

*Humphrey v. Mabry*, 482 F.3d 840 (6th Cir. 2007) .........................................................10

*Illinois v. Caballes,* 543 U.S. 405 (2005) .........................................................................10

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019)............................................26

*Johnson v. Weare Police Dep't,* No. 12-cv-032, 2013 U.S. Dist. LEXIS 152209, 2013 WL 5740453 (D.N.H. Oct. 23, 2013) ..............................................................12

*Jones v. Friddell*, No. 3:25-cv-2693, 2026 U.S. Dist. LEXIS 53332 (N.D. Ohio Mar. 16, 2026) ......................................................................................19

*Jones v. Lape*, No. 2:25-cv-1502, 2026 U.S. Dist. LEXIS 145729 (S.D. Ohio May 27, 2026) ......................................................................................13

*Jttonali One Eye El-Bey v. Sylvester*, No. 1:21-cv-680, 2023 U.S. Dist. LEXIS 3128 (S.D. Ohio Jan. 6, 2023) ..........................................................................................16

iv

*Kent v. Oakland Cnty.*, 810 F.3d 384 (6th Cir. 2016)..................................................................23

*Kush v. Rutledge*, 460 U.S. 719 (1983)........................................................................................24

*Kentucky v. Graham*, 473 U.S. 159 (1985)..............................................................13, 19, 20, 26

*Lamb v. Telle,* No. 5:12-CV-00070-TBR, 2012 U.S. Dist. LEXIS 149991 (W.D. Ky. Oct. 17, 2012) ..............................................................................................................................................16

*Leppla v. Kagel*, No. 3:19 CV 2487, 2020 U.S. Dist. LEXIS 157774, 2020 WL 5106841 (N.D. Ohio Aug. 31, 2020) ..........................................................................................................19

*Lewis v. Stellingworth*, No. 07-CV-13825, 2009 U.S. Dist. LEXIS 40724 (E.D. Mich. May 14, 2009).........................................................................................................18

*Livermore v. Lubelan*, 476 F.3d 397 (6th Cir. 2007).................................................................20

*Malley v. Briggs*, 475 U.S. 335 (1986) ......................................................................................16

*Matthews v. Roberts,* No. 3:12-CV-828-H, 2013 U.S. Dist. LEXIS 59064 (W.D. Ky. Apr. 24, 2013) ..........................................................................................................27

*McGee v. United States*, No. 1:10-cv-521, 2010 U.S. Dist. LEXIS 91864, 2010 WL 3211037 (S.D. Ohio Aug. 12, 2010)...........................................................................................................19

*Miller v. Village of Pinckney*, 365 F. App'x 652 (6th Cir. 2010)................................................21

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .................................................25, 26, 27, 28

*Mullins v. Cyranek*, 805 F.3d 760 (6th Cir. 2015).....................................................................20

*Mullis v. U.S. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385 (9th Cir. 1987). ...........................19

*Nykoriak v. City of Hamtramck*, No. 14-11954, 2016 U.S. Dist. LEXIS 55283 (E.D. Mich. Apr. 26, 2016).......................................................................................................17

*Pounds v. Michigan*, No. 1:25-cv-679, 2025 U.S. Dist. LEXIS 255614 (W.D. Mich. Nov. 24, 2025)........................................................................................................25

*Powers v. County of Lorain*, 259 F. App'x 818 (6th Cir. 2008) ..................................................26

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir. 2014).....................................................................26

*Rodriguez v. United States*, 575 U.S. 348 (2015) ..................................................................10, 11

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................................10

v

*Scott v. Clay Cnty., Tenn.*, 205 F.3d 867 (6th Cir.2000)................................................................26

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................................................9, 21

*Silberstein v. City of Dayton*, 440 F.3d 306 (6th Cir. 2006) ..........................................................10

*Smith v. Freland,* 954 F.2d 343 (6th Cir.1992)..............................................................................20

*Soloe v. Fischer*, No. 3:23-cv-382, 2024 U.S. Dist. LEXIS 171288
(E.D. Tenn. Sep. 23, 2024) ....................................................................................12

*Sposato v. Carey*, No. 5:23-cv-364, 2024 U.S. Dist. LEXIS 26902, 2024 WL 637423
(N.D.N.Y. Feb. 15, 2024) ......................................................................................12

*Standifer v. Lacon*, 587 Fed. Appx. 919 (6th Cir. 2014) ................................................................21

*State v. Strohl*, 2018-Ohio-4266, 2018 WL 5250174 (Ohio Ct. App. Oct. 18, 2018)...................16

*Thacker v. Lawrence Cty.*, 182 F. App'x 464 (6th Cir. 2006).........................................................21

*Thomas v. City of Columbus*, 854 F.3d 361 (6th Cir. 2017) ...........................................................21

*Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472 (6th Cir. 2020)................................27

*Tulis v. Bennett*, No. 25-5430, 2026 U.S. App. LEXIS 672 (6th Cir. Jan. 9, 2026)......................14

*United States v. Bell,* 555 F.3d 535 (6th Cir. 2009)........................................................................11

*United States v. Coleman*, 871 F.3d 470 (6th Cir. 2017) ...............................................................12

*United States v. Evans*, 574 F.2d 352 (6th Cir. 1978) ...................................................................16

*United States v. Odoms,* No. 2:17-cr-210, 2018 U.S. Dist. LEXIS 96452
(S.D. Ohio June 8, 2018). ......................................................................................16

*Volunteer Med. Clinic, Inc. v. Operation Dallas*, 948 F.2d 218 (6th Cir. 1994)...........................24

*Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669 (6th Cir. 2005).......................................16

*Weatherholt v. Crockett Cty.*, No. 25-5800, 2026 U.S. App. LEXIS 6640
(6th Cir. Mar. 4, 2026)............................................................................................9

*Weser v. Goodson*, 965 F.3d 507 (6th Cir. 2020) ....................................................................13, 24

*Williams v. City of Lorain*, No. 1:25-CV-642, 2025 U.S. Dist. LEXIS 134142
(N.D. Ohio July 15, 2025) ......................................................................................13

vi

*Yancey v. Carroll Cnty., Ky,* 876 F.2d 1238 (6th Cir. 1989) ..........................................................16

**STATUTES**

42 U.S.C. § 1985(2) ......................................................................................................23, 24

Ohio R.C. § 311.07 ............................................................................................................19

Ohio R.C. § 1901.31(E) .....................................................................................................19

Ohio R.C. § 1901.32(A)(5) ...............................................................................................20

Ohio R.C. § 1901.32(A)(7) ...............................................................................................19

Ohio R.C. § 2705.01 ..........................................................................................................17

Ohio R. C. § 2937.29 .........................................................................................................16

Ohio R. C. § 2937.43 .........................................................................................................16

Ohio R.C. § 4510.11 ..........................................................................................................15

Ohio R.C. § 4510.12 ..........................................................................................................15

Ohio R.C. § 4511.21 ..........................................................................................................15

A.      **Factual Background**

1.      **The March 14, 2026 Traffic Stop.**

On March 14, 2026, Henry County Sheriff's Deputy Ryan Axle initiated a traffic stop on State Route 108 in Henry County.[1]   The events that occurred during the traffic stop are entirely captured by two videos made from Deputy Axle's body worn camera.

The first video, beginning at 15:03:40 pm depicts Deputy Axle exit his squad car and approach Plaintiff who was in the driver's seat of a Dodge Silverado truck.  Plaintiff had his window rolled down and was holding some kind of passport and another document.[2]   Deputy Axle advised Plaintiff he was pulled over for speeding.[3]   Then Deputy Axle questioned why Plaintiff was offering his passport and asked, "You don't have a license?"   Plaintiff responded, "No, I'm Cherokee." Plaintiff then said, "We are not part of the corporation, the U.S. Corporation.  I'm a diplomat, so I have immunity from statutes, codes, etc."[4]   Plaintiff was not belligerent or argumentative.

Deputy Axle then asked for the insurance information for the vehicle.  Plaintiff handed Deputy Axle an expired insurance card.[5]   Deputy Axle asked Plaintiff who owned the vehicle.  Plaintiff said his wife and then volunteered that he and his wife had different last names but were married.[6]   Deputy Axle asked for alternative identification, then asked Plaintiff questions about the location of the Cherokee nation.  Plaintiff said the elders were in Kentucky and turned to his companion in the passenger seat for verification.  Deputy Axle asked if Plaintiff's wife was part

---

[1] Deputy Ryan Axle's Body Worn Camera Video 1 is included on the flashdrive that is being filed manually with the Court as Exhibit B. It is identified as BWC #1 5000888_00350820240314150246_O_0842.  See Video 1 03/14 15:03:20 to 15:03:40
[2] Id.  15:03:50  to 15:03:56.
[3] Id.  15:03:56  to 15:04:01.
[4] Id.  15:04:01  to 15:04:20.
[5] Id.  15:04:20  to 15:04:40.
[6] Id.  15:04:40  to 15:04:50.

of the Cherokee nation and verified that the vehicle being driven by Plaintiff was registered to her.  He walked back to his squad car.[7]   By this time, roughly four minutes had elapsed since the stop was made.

Back inside the squad car, Deputy Axle contacted dispatch and asked if there was anyway to verify somebody's diplomatic status.  The dispatcher said he was not sure but could try to Google something.[8]  Deputy Axle asked that the dispatcher get another resource on the phone.  Axle waited for a few minutes, then received a phone call in which the speaker said, "We do not do anything with diplomatic.  I could run a plate for you."[9] The speaker asked if the driver was saying he didn't have to do something because he was a diplomat, and Deputy Axle said, "Pretty much.  I'm just trying to verify his status."[10]

Deputy Axle then found and called a hotline information center for the U.S. State Department.[11]  He received a recorded message that all analysists were busy assisting other callers, and to remain on the line.[12]   While waiting, Deputy Axle made other efforts through Dispatch to obtain information about Plaintiff and his identity.   Dispatch informed him that there was a Mark W. Smith with a suspended license out of Lyons, Ohio.[13]  It had now been roughly 16 minutes since the stop was initiated.

Deputy Axle remained on hold with the U.S. State Department and then exited the squad car and returned to the window of Plaintiff's truck.[14]  When he informed Plaintiff that he was on the line with the State Department, Plaintiff expressed no concerns about delay or the time the

---

[7] Id.  15:04:50  to 15:07:17.
[8] Id.  15:07:17 to 15:08:08.
[9] Id.  15:08:08 to 15:10:21.
[10] Id.  15:10:21 to 15:11:27.
[11] Id.  15:11:27 to 15:14:03.
[12] Id. 15:14:03 to 15:14:04.
[13] Id. 15:14:04 to 15:19:47.
[14] Id. at 15:23:11

2

stop was taking.   Deputy Axle asked Plaintiff if he ever had a license in Ohio, and he said, "Way back."   He admitted he couldn't remember when he last had a valid Ohio license.[15]   He claimed to have found out he was Cherokee, he was made a tribal member, and then he "revoked all that stuff."   Plaintiff then struggled to explain his purported role in performing "missions" as a diplomat for the Cherokee nation.[16]   Plaintiff explicitly told Deputy Axle he was not a U.S. citizen.[17]   He then tried to explain that because the "license" he carried was not printed in All Caps, he like other individuals was made a legal corporate entity.[18]   Deputy Axle inquired, "So, a sovereign citizen?"   Plaintiff initially said, "Correct," then said, "no, don't say that; I'm not a citizen.  We have sovereignty but I'm not a citizen."[19]   Deputy Axle returned again to the squad car.

Back in the squad car, Deputy Axle talked to Plaintiff's wife, Tina, on the phone.  She affirmed that she knew Plaintiff was driving her truck but could not answer Deputy Axle's questions about why he was driving her truck without a valid license.   She said he had a "travel ID."  Deputy Axle questioned if her husband was making up the information about the Cherokee tribal association, and if he had truly denounced his U.S. Citizenship.[20]  Meanwhile, the body camera audio reflects Deputy Axle continued to keep his other phone on hold with the U.S. State Department as the first body camera video ends.  By this time, 30 minutes had elapsed since the stop began.

---

[15] Id.  15:23:11 to 15:23:48.
[16] Id. 15:23:48 to 15:24:40.
[17] Id. 15:24:40 to 15:24:47
[18] Id. 15:24:47 to 15:25:55.
[19] Id.  15:25:52 to 15:26:03
[20] Id.  15:27:46 to 15:32:43

3

The second video[21] commences with Deputy Axle still on the phone with Plaintiff's wife who affirmed that Plaintiff was acquainted with Fulton County Sheriff Roy Miller.[22]  Plaintiff then asked dispatch to contact Fulton County to see if they had any dealings with Plaintiff.[23]  He also left a message on the State Department hotline seeking information.  Deputy Axle next called a supervisor at the Henry County Sheriff's Office and briefed him on the situation.  The supervisor advised Deputy Axle to "write him up," and let the Court decide issues related to Plaintiff's diplomatic immunity claims.[24]  Deputy Axle then asked Dispatch to get Plaintiff's wife on the phone again to come get the vehicle.

Deputy Axle returned to Plaintiff's truck for the third time.  Plaintiff offered him the address of the tribe on his phone, which differed from the information Deputy Axle had found when googling in his squad car.  Plaintiff explained that this was because they were not "reservation Indians,' but were spread out.[25]   Deputy Axle then explained he would cite Plaintiff who would be required to appear in Court on Monday.  Plaintiff's companion seated in the passenger seat of the Dodge truck offered his driver's license.  Deputy Axle explained he would check the validity of the companion's license.  He warned that he also would cite Plaintiff with identity fraud if it was later determined he had supplied false information.   Plaintiff assured Deputy Axle he was "legit" and cited a U.S. Supreme Court case which he claimed validated his position.  He also said that the citation could not be printed in All Caps.[26]   Deputy Axle explained that this was how the system printed the citation.  He returned again to the squad car.[27]

---

[21] BWC #2 5000888_00350820240314153247_O_0843
[22] Id.
[23] Id. at 15:38:37 to 15:39:18.
[24] Id. at 15:39:18 to 15:41:48.
[25] Id. at 15:42:40 to 15:43:14.
[26] Id. at 15:43:14 to 15:45:00.
[27] Id. at 15:45:40.

4

In the squad car, Deputy Axle radioed dispatch to check on the driving status of Plaintiff's companion.   He verified the companion's license was valid.   He then prepared an e-citation, which was printed out in the squad car.[28]   Deputy Axle left the squad car again and approached the window.  Plaintiff joked, "This must be your longest stop of the day," and laughed heartily.[29]   Told his companion would have to drive, Plaintiff said that was fine. Deputy Axle returned the purported ID and passport.   Deputy Axle then handed Plaintiff the citation and told him that he manually changed the citation so that the name was in lower case. He explained that Plaintiff would have to appear at the Municipal Court in Napoleon the following Monday and informed him that he was cited for driving without a license, speeding, and driving on a suspended license.   For a second time, Plaintiff dropped the name of Fulton County Sheriff Miller.[30]   Deputy Axle released Plaintiff to leave the scene roughly 56 minutes after the stop was initiated, with Plaintiff saying it was "awesome" that Deputy Axle made the manual change on the citation.[31]

**2.      The Court Appearance on Napoleon Municipal Court on March 18, 2024.**

Plaintiff appeared in the courtroom of the Napoleon Municipal Court before Judge Elizabeth Schuller on March 18, 2024.   His appearance in the courtroom is depicted on the Court security video which also is manually filed with the Court.   Although that video lacks audio, Plaintiff's statements in the Courtroom were recorded by the Court reporter.  A transcript of the appearance is attached as Exhibit A.  In both demeanor and in his oral statements, Plaintiff behaved entirely differently than he had at the roadside stop.

---

[28] Id. 15:45:43 to 15:56:02.
[29] Id. 15:56:05 to 15:56:23.
[30] Id. at 15:56:23 to 15:57:20.
[31] Id. 15:58:27 to 15:58:43.

The video depicts that Plaintiff was seated in the gallery behind the courtroom bar, and when his name was called, did not move beyond the bar to the area of counsel table, as did the predecessor who appeared before the Judge.[32]   The transcript reflects that the bailiff called the name "Mark William Smith" and the case number.  Plaintiff responded that he was the "heir to the trust."  The Judge asked if he was Mark William Smith, and Plaintiff again responded that he was the heir to the trust.   When the Judge said she did not care about a trust, Plaintiff said:

> [I] know you don't care, that's the problem, that's why we're here.
> You're using my private trust property like toilet paper and you
> need to stop.[33]

The Judge persisted in attempting to determine if the speaker was Mark William Smith.  Plaintiff claimed he was an "heir to the All Caps."[34]  The Judge said if Mark William Smith was not present, she would issue a warrant for his arrest.  The bailiff told Plaintiff to stop raising his voice.  The security video reflects that Plaintiff repeatedly pointed his fingers and gestured aggressively in the direction of both the Judge and the bailiff Walker.  He made comments to the effect that he was in court under duress.  When the Judge asked, "So you're not coming up here?", Plaintiff responded, "Of course I'm not."

The Judge again said she was issuing an arrest warrant.  Plaintiff pointed to three men in the gallery and said, "I've got three witnesses right here, that I was here."   The Judge ordered that Plaintiff approach the bench, but Plaintiff refused.  The Judge said, "I'm trying to arraign you on the charges that you were charged with, sit there and be civil."  Plaintiff said, "you are not going to arraign me on free travel," then said he had a tribal ID, and claimed to be a diplomat.  The Judge told him not to yell, and repeated again that she was issuing a warrant for

---

[32] Security Video of Gallery 2 2024-03-18_10_45_38_052; 0:16 to 0:49,
[33] Exhibit A, p. 2.
[34] Id. at p. 3

6

his arrest.  Plaintiff said he would not accept that, and did not consent.   The Judge told Plaintiff she could have her bailiff cuff him and take him to CCNO.  Eventually Plaintiff began to use profanity with the Judge ("The hell you're not").  The Judge instructed the bailiff to take Plaintiff into custody.

A Judgment Entry on the Napoleon Municipal Court docket sheet for the traffic-related charges states under entries dated March 18, 2024:

- Case set for arraignment on 03-18-24 at 9:00 AM.  JE filed; This matter came on for initial appearance on 03/18/24; Def displayed a complete lack of respect to the Court and his attitude and comments severely obstructed the administration of justice; as such, Def is hereby found in direct contempt, shall be immediately taken into custody and held at CCNO pending further hearing on this matter....

- NPD executed contempt of court charge, Defendant transported to CCNO....[35]

### 3.      The Effort to Place Plaintiff in Custody

In response to the Judge's order, plain-clothed bailiff Sean Walker moved behind Plaintiff to place him in handcuffs, and gestured for Deputy Axle, who was in the courtroom, to assist.  Walker placed his hand on Plaintiff's right arm, and Plaintiff aggressively pulled away. Deputy Axle reached for Plaintiff's left arm, and Plaintiff then pushed Axle in the chest.  As Walker and Axle each grabbed his arms in the back, Plaintiff rushed through the courtroom doors, with Walker and Axle trying to gain control of his arms.  Plaintiff's three "witnesses"/companions followed, one already readying his cell phone to record the events.

Security video taken from the lobby area of the courthouse shows some of what happened next.[36]    Plaintiff struggled with Walker and Axle as they tried to gain control of his arms for

---

[35] See exhibit to Judge Schuller's Motion to Dismiss, Rec. Doc. #10-2, Page ID # 151.
[36] Security video of the lobby has been filed manually with the Court.

handcuffing.  One of Plaintiff's witnesses began video recording the incident on his cell phone.  Plaintiff continued to resist and tussle with the officers, eventually moving into a hallway outside the view of the security camera.

Plaintiff alleges in his Complaint that he was tased.  Deputy Axle's report, attached as an Exhibit to the Complaint, explains that Plaintiff continued to resist arrest despite being told multiple times to place his hands behind his back.  Deputy Axle warned Plaintiff he would be tased, yet the resistance continued.  According to the report, Deputy Axle deployed his taser but the probes did not penetrate Plaintiff's clothing.  Plaintiff does not deny this, nor does he allege use of the taser was an act of excessive force.  Rather, the Complaint states: "Walker and Axle used excessive force causing serious physical injury *by slamming his head through the courtroom doors*."[37]  Later in the Complaint, Plaintiff repeats that the use of excessive force caused "blunt force head trauma."[38]  Not until additional officers arrived did Plaintiff agree to place his hands behind his back to be secured in handcuffs.  Deputy Axle removed the taser probes from Plaintiff's clothing, and he was escorted, with no apparent difficulty walking, out of the lobby into the parking lot.[39]

Security videos from the parking lot depict Plaintiff being placed into a squad car while his companions continued to record the events on their cell phones, and later, removed a flag from a brief case and unfurled it in apparent support of Plaintiff.   According to the Complaint, Plaintiff was arrested, cleared at a local hospital, then booked into jail on the bench warrant.[40]

---

[37] Complaint ¶14, Rec. Doc. #2, Page ID # 39.
[38] Complaint ¶ 97, Doc. #2, Page ID #51.
[39] Complaint Exhibit 3,  Page ID #2-3.
[40] Complaint ¶17-19, Rec. Doc. #2, Page ID # 39-40.

Court records attached to the Motion to Dismiss filed by Judge Elizabeth Schuller[41] reflect that Plaintiff served a 10-day sentence in jail.[42]

**B.      The Legal Standard Applicable to this Motion.**

To survive this Rule 12 Motion, Plaintiff's Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Weatherholt v. Crockett Cty.*, No. 25-5800, 2026 U.S. App. LEXIS 6640, at *4 (6th Cir. Mar. 4, 2026), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 9 (2007)). While it is true that Plaintiff's Complaint need not include "detailed factual allegations," it is also true that a complaint must offer more than "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation modified). So, "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Id.*

When a video is clear and blatantly contradicts or discredits a plaintiff's version of events, the District Court is permitted to rely on the video over the complaint. *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) In other words, a District Court may rely upon video footage to determine that a plaintiff's allegations are not substantively plausible. *Weatherholt,* supra, at *6-8.

**C.      Argument in Support of Rule 12 Dismissal of the Individual Capacity Claims**

No substantively plausible claim for relief has been asserted against any of the moving Defendants (Axle, Walker, Cotter and Trejo) sued in their individual capacities. These claims must be evaluated through the lens of qualified immunity. Qualified immunity recognizes that government officials performing discretionary functions generally should be shielded from liability for civil damages when their conduct does not violate clearly established statutory or

---

[41] Doc. # 2, Page ID #39-40.
[42] Doc. #10-2, Page ID # 143.

9

constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If officials of reasonable competence could disagree on the legality of the challenged conduct, the official is entitled to qualified immunity. *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007).

Two inquiries frame the qualified immunity analysis. One inquiry asks whether the official's conduct violated a constitutional or statutory right, considering the facts in a light most favorable to the party asserting the injury. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The other inquiry is whether the right was clearly established in light of the specific circumstances of the case. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

**1.     No valid claim individual capacity claim exists arising from the March 14, 2024 traffic stop.**

Although not referred to in any of the "Counts," Plaintiff alleges in the body of the Complaint that Deputy Axle committed a constitutional deprivation by extending the traffic stop on March 14, 2024 to "pursue a baseless criminal fishing expedition in a discriminatory retaliation for exercising the constitutional right to freedom of speech and association."[43]

The Supreme Court evaluated claims of unduly prolonged traffic stops in context with the Fourth Amendment's prohibition upon unreasonable seizures in *Rodriguez v. United States*, 575 U.S. 348, 354-56 (2015). The "tolerable duration" of police inquiries is determined by the seizure's "mission" which is to address the traffic violation that warranted the stop. *Id.*, citing *Illinois v. Caballes,* 543 U.S. 405, 407 (2005). Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." *Caballes*,

---

[43] Complaint ¶ 41, Rec. Doc. #2, Page ID # 43

10

543 U. S., at 408.  "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez,* supra, 575 U.S. at 355.  The Supreme Court has explained that these kind of checks "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.,* citing *Delaware v. Prouse*, 440 U. S. 648, 658-659 (1979); LaFave, Search and Seizure §9.3(c), at 516 (A "warrant check makes it possible to determine whether the apparent traffic violator is wanted for one or more previous traffic offenses.").

In this case, everything Deputy Axle did was aimed at establishing Plaintiff's identity, his authority to drive a vehicle not registered to him, whether he had a valid driver's license or was operating under suspension, and if his claim of exemption from citation due to his claimed tribal nation "diplomatic status" was true.  All these tasks were central to the original mission, which was to assure that Plaintiff, who had been clocked speeding, was safely and properly operating a motor vehicle.

Deputy Axle did not deviate from investigating the traffic offense -- in other words, he did not extend the stop to ferret out the possibility that Plaintiff had committed some unrelated other crime, such as to conduct a canine drug sniff.  Plaintiff supplied false information that members of the Cherokee nation are exempt from the application of routine traffic laws.  The stop was prolonged because Deputy Axle gave Plaintiff the benefit of the doubt that his implausible story and bogus documents may have had some validity.  This did not render the traffic stop unreasonably prolonged to the degree that it violated the Constitution. See, in accord, *United States v. Bell,* 555 F.3d 535, 542-43 (6th Cir. 2009) (recognizing that time spent

11

determining whether a driver had permission to operate a vehicle is within the purpose of the initial stop.)

While the qualified immunity analysis of this claim can end with a finding that no constitutional violation took place on March 14, 2024, it also can be resolved in Deputy Axle's favor by determining that no clearly established law holds that it is a constitutional violation to prolong a traffic stop when a driver, in possession of no valid license or proof of insurance, provides an officer false information claiming a form of diplomatic immunity associated with tribal membership. Plaintiff's statements to Deputy Axel pertaining to his claim that he was exempt from the legal requirements of licensure and insurance "bear the hallmark of sovereign citizen ideology". *Soloe v. Fischer*, No. 3:23-cv-382, 2024 U.S. Dist. LEXIS 171288, at *5-6 (E.D. Tenn. Sep. 23, 2024), citing *Sposato v. Carey*, No. 5:23-cv-364, 2024 U.S. Dist. LEXIS 26902, 2024 WL 637423, at *4 n.5 (N.D.N.Y. Feb. 15, 2024) (finding that the plaintiff's contentions that he did not need a driver's license or vehicle registration provided "classic examples of Sovereign Citizen ideology"); *Johnson v. Weare Police Dep't,* No. 12-cv-032, 2013 U.S. Dist. LEXIS 152209, 2013 WL 5740453, at *2 n.2 (D.N.H. Oct. 23, 2013) (explaining that the plaintiff's "belief that he needs neither a driver's license nor a vehicle registration is consistent with those of the sovereign citizen movement.") Sovereign citizen ideology has been thoroughly discredited and is deemed frivolous. *See United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017) (listing cases). No constitutional, statutory, common law or native right allowed Plaintiff to operate a motor vehicle without a valid driver's license, registration, or proof of insurance. See *Dunn v. Post*, No. 21-1412, 2022 U.S. App. LEXIS 2616, at *6 (6th Cir. Jan. 27, 2022).

12

Resolution of the March 14, 2024 traffic stop was delayed not because Deputy Axle acted unreasonably but because Plaintiff did.   Plaintiff tried to convince Deputy Axle that his ludicrous and discredited ideological theories exempted him from enforcement of the traffic laws.  No clearly established law informed Deputy Axle he could not extend the traffic stop in order to verify the truth or falsity of Plaintiff's claims that he did not have to obey Ohio traffic laws.  Qualified immunity applies.

### 2.   No valid individual capacity claim exists from the events related to Plaintiff's March 18, 2024 court appearance.

Seven of the nine Counts in the Complaint seek to impose liability on Defendants Axle, Walker, Trejo, and Cotter sued in their individual capacities for alleged constitutional or statutory violations.  None of these claims set forth a plausible claim for relief.

### a.   Plaintiff was legally seized by Deputy Axle, Bailiff Walker and Officer Trejo at the Napoleon Municipal Court.

Counts I, II, III ,IV and V of the Plaintiff's Complaint assert that Plaintiff was unlawfully taken into custody and arrested at the Napoleon Municipal Court on March 18, 2024, then falsely imprisoned at CCNO.  Plaintiff also asserts a malicious prosecution claim apparently arising out of these same events.

All of these claims, at their core, assert that Plaintiff's seizure and resulting custodial detention were unreasonable under the Fourth Amendment.[44] *Weser v. Goodson*, 965 F.3d 507,

---

[44] In Count IV of the Complaint, Plaintiff purports to makes a false imprisonment claim arising under the Fourteenth Amendment.  But Plaintiff's false imprisonment claims arise out of his claims for illegal seizure and false arrest, which are both "constitutionally cognizable" under the Fourth Amendment. *Jones v. Lape*, No. 2:25-cv-1502, 2026 U.S. Dist. LEXIS 145729, at *13 (S.D. Ohio May 27, 2026), citing *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (citing *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020)). When a false-imprisonment claim arises out of an alleged false arrest, these two claims are identical. *Brown v. Hamilton Cnty.*, No. 1:19-cv-969, 2020 U.S. Dist. LEXIS 258551, 2020 WL 12178001, at *13 (S.D. Ohio Oct. 19, 2020) (quoting *Weser*, 965 F.3d at 513) (internal quotation marks omitted).  Because the Fourth Amendment provides protection for these alleged violations, Plaintiff has no distinct Fourteenth Amendment due process claim. *See Weser*, 965 F.3d at 513.  This is consistent with the principle that when another constitutional amendment provides explicit protection, then a Fourteenth Amendment substantive due process claim is properly dismissed. *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013) (per curiam) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

13

513 (6th Cir. 2020) (recognizing that when a false imprisonment claim arises out of an alleged false arrest, those claims are identical for purposes of the Fourth Amendment); *Williams v. City of Lorain*, No. 1:25-CV-642, 2025 U.S. Dist. LEXIS 134142, at *5 (N.D. Ohio July 15, 2025), quoting *Weser* ("This court has recognized that claims for false arrest and malicious prosecution are both constitutionally cognizable and both arise under the Fourth Amendment."). Thus, if the seizure was constitutionally valid, then Counts I through V all fail as a matter of law.

It appears Plaintiff is drawing a distinction between the Court's oral order issuing a bench warrant, and the Court's later written Judgment Entry finding him to be in direct contempt of Court.  But a single seizure took place.   And, whether the officers were relying upon the Judge's oral warrant issued from the bench, or the Court's subsequent Judgment Entry finding Plaintiff in contempt, or even the facts known to Deputy Axle from the roadside encounter on March 14, 2024, the seizure was constitutionally valid under the Fourth Amendment.

> **i.** **The seizure was valid because there was probable cause to believe Plaintiff committed criminal offenses and because of the subsequent bench warrant for arrest.**

First, an arrest or seizure is deemed reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.  *Germany v. Watkins,* No. 23-1812, 2024 U.S. App. LEXIS 11281, at *6-7 (6th Cir. May 8, 2024), citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Conversely, false arrest or false imprisonment occurs when an officer makes a warrantless arrest without probable cause. *Tulis v. Bennett*, No. 25-5430, 2026 U.S. App. LEXIS 672, at *3 (6th Cir. Jan. 9, 2026) citing *Akima v. Peca*, 85 F.4th 416, 422-23 (6th Cir. 2023).  Probable cause is present where "the facts and circumstances within the officers' knowledge [are] sufficient to warrant a man of reasonable caution to believe

14

that an offense had been, was being, or was about to be committed." *Hartman v. Thompson*, 931 F.3d 471, 481 (6th Cir. 2019) (quoting *Fox v. Desoto*, 489 F.3d 227, 236 (6th Cir. 2007)).

Plaintiff's conduct on March 14, 2026 established probable cause for his arrest. Deputy Axle's roadside investigation including Plaintiff's statements recorded on body camera video created a reasonable belief that he committed multiple criminal offenses including:

- Driving under a suspended license (illegal under Ohio R.C. §4510.11);

- Operating a motor vehicle without a valid license (illegal under Ohio R.C. §4510.12);

- Excessive speed (illegal under Ohio R.C. §4511.21).

Plaintiff's Complaint fails to allege facts which, if known by a reasonable officer, would have negated his criminal liability for any of these offenses. To the contrary, a reasonable officer confronting an unlicensed, uninsured driver clocked speeding would certainly come to the belief that criminal offenses had occurred. Thus, Plaintiff cannot show that he could not have been seized, arrested and imprisoned until arraigned because probable cause existed on these charges. Indeed, Plaintiff could have been taken into custody on these charges at the scene of the traffic stop on March 14, 2026. Instead, as an accommodation, he was released subject to the citation/summons requiring Mark William Smith to appear on March 18, 2024 at the Napoleon Municipal Court.

Yet, on March 18, 2024, although Plaintiff was physically in the Napoleon Municipal Court courtroom, he refused to approach the bench when his case was called and refused to acknowledge his identity. Instead, referred to himself as the "heir to the trust," and "heir to the All Caps." Plaintiff took the position that the individual Mark William Smith had not appeared. He refused to respond to the Judge's efforts to engage him the arraignment process. For all intents and purposes, he refused to appear at all, thus preventing the criminal charges from being

15

processed to their conclusion.   This prompted the presiding Judge to issue a bench warrant for his arrest.  The existence of the bench warrant is a second reason to find that Plaintiff's claims for unlawful seizure and false arrest are invalid.

Bench warrants issued by a presiding judge for failure to appear are "clearly valid and based on probable cause." *Jttonali One Eye El-Bey v. Sylvester*, No. 1:21-cv-680, 2023 U.S. Dist. LEXIS 3128, at *9 (S.D. Ohio Jan. 6, 2023), citing *United States v. Evans*, 574 F.2d 352, 355 (6th Cir. 1978). Bench warrants serve the important function of ensuring the appearance of defendants so that criminal proceedings can proceed to a conclusion. *United States v. Odoms,* No. 2:17-cr-210, 2018 U.S. Dist. LEXIS 96452, at *8 (S.D. Ohio June 8, 2018).  Ohio trial courts have the "authority to issue bench warrants for [a defendant's] arrest upon failure to appear." *State v. Strohl*, 2018-Ohio-4266, 2018 WL 5250174, *4 (Ohio Ct. App. Oct. 18, 2018) (citing Ohio Rev. Code §§ 2937.29 and 2937.43).  Accordingly Judge Schuller's bench warrant in this case was valid and appropriate.  See generally, *Lamb v. Telle,* No. 5:12-CV-00070-TBR, 2012 U.S. Dist. LEXIS 149991, at *1 (W.D. Ky. Oct. 17, 2012) (recognizing that issuance of a bench warrant was a valid judicial act when a criminal defendant refused to acknowledge his identity at an arraignment.)

"An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to $ 1983." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).  Law enforcement officers are entitled to rely on a judicially secured warrant to establish immunity from a § 1983 action unless the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll Cnty., Ky,* 876 F.2d 1238, 1243 (6th Cir. 1989) (citing *Malley v. Briggs*, 475 U.S. 335 (1986)).

16

The rule, not the exception, applies here.  Deputy Axle and Bailiff Walker were both present in the courtroom and observed that Plaintiff had refused to identify himself and participate in the arraignment.  Axle personally knew that Plaintiff had admitted to facts establishing criminal liability.  Under these circumstances, they both could reasonably rely upon the Judge's oral bench warrant to take Plaintiff into custody.  Likewise, because a valid warrant was in effect when Napoleon Police Officer Trejo transported Plaintiff to CCNO, Plaintiff's Fourth Amendment claim as to him fails too.  See e.g. *Nykoriak v. City of Hamtramck*, No. 14-11954, 2016 U.S. Dist. LEXIS 55283, at *4-5 (E.D. Mich. Apr. 26, 2016) ("because there was a valid warrant in existence that the officers relied upon to arrest Plaintiff, his Fourth Amendment argument necessarily fails.").

At the very least, no clearly established law informed these officers that they could not rely upon a bench warrant issued by a judge to take an individual present in a courtroom into custody when that person has refused to acknowledge his identity and thus refused to enable the arraignment process to be completed.   Because Plaintiff cannot overcome either prong of the qualified immunity test, these claims should be dismissed.

### ii.    The seizure was valid because of the contempt order.

There is third reason that the Fourth Amendment seizure claims fail against the law enforcement officers.  Under Ohio law, in any action in which a municipal court has jurisdiction, the judge has the power to "punish contempts."  Ohio R .C. §1901.13(A)(1).  Direct contempt is defined by R.C. §2705.01, which states: "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

17

To the extent that Plaintiff is challenging his seizure and imprisonment due to the Judgement Entry issued by Judge Schuller finding him in direct contempt and sentencing him to serve 10 days in jail, the claim fails because law enforcement officers who execute or enforce court orders are entitled to absolute quasi-judicial immunity.  See e.g., *Gipson v. Hamilton Cty. Common Pleas Court*, No. 1:22-cv-764, 2023 U.S. Dist. LEXIS 208902, at *22 (S.D. Ohio Nov. 20, 2023), report and recommendation adopted 2023 U.S. Dist. Lexis 219951 (finding that either quasi-judicial or qualified immunity applied to defeat an unconstitutional seizure claim premised on enforcement of a court's direct contempt order).  See also *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (recognizing that non-judicial officers enforcing or executing court orders are entitled to absolute immunity);  *Lewis v. Stellingworth*, No. 07-CV-13825, 2009 U.S. Dist. LEXIS 40724, at *25 (E.D. Mich. May 14, 2009) (finding officers entitled to absolute quasi-judicial immunity for seizing a plaintiff pursuant to a court's order).

In sum, the law enforcement officers who seized and transported Plaintiff to CCNO cannot be liable for any Fourth Amendment claim premised on the seizure because fact-based probable cause, the bench warrant, and the contempt order - - whether considered independently and even more so when considered together - - made Plaintiff's seizure constitutionally reasonable.

> **b.** **Clerk Cotter is entitled to absolute quasi-judicial immunity for the Fourth Amendment seizure claims.**

Clerk Melisssa Cotter had no role in physically seizing Plaintiff.  She is alleged only to have entered orders on the court docket.  Yet this duty is integral to the judicial process, and as such, those acts cannot form the basis of a legal claim.

"A court clerk or a clerk's office employee 'who performs tasks that are an integral part of the judicial process is entitled to absolute quasi-judicial immunity from suits for

18

damages.'" *McGee v. United States*, No. 1:10-cv-521, 2010 U.S. Dist. LEXIS 91864, 2010 WL 3211037, at *2 (S.D. Ohio Aug. 12, 2010) (citing *Gallagher v. Lane*, 75 F. App'x 440, 441 (6th Cir. 2003)). "When a clerk files or refuses to file a document with the court, he is entitled to immunity, provided the acts complained of are within the clerk's jurisdiction.'" *McGee*, 2010 U.S. Dist. LEXIS 91864, 2010 WL 3211037, at *2 (quoting *Harris v. Suter*, 3 F. App'x 365, 366 (6th Cir. 2001) (per curiam) (citing *Mullis v. U.S. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987). More specifically, "it is well-settled that absolute judicial immunity covers a clerk of court's 'involvement with the issuance of arrest warrants.'" *Jones v. Friddell*, No. 3:25-cv-2693, 2026 U.S. Dist. LEXIS 53332, at *8 (N.D. Ohio Mar. 16, 2026) citing *Leppla v. Kagel*, No. 3:19 CV 2487, 2020 U.S. Dist. LEXIS 157774, 2020 WL 5106841, at *4 (N.D. Ohio Aug. 31, 2020) (citing *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988)).

In short, Plaintiff has failed to allege that that Cotter violated his rights through any non-judicial act. The Clerk's statutorily-defined duties include entering all orders and court proceedings issued by a judge on the case docket – which, in this case, included the contempt order and the arrest warrant. Ohio R.C. § 1901.31(E). Therefore, Defendant Cotter cannot be liable in damages for engaging in those acts.

### c. Defendants Walker and Axle are entitled to qualified immunity on the Fourth Amendment excessive force claim.

Law enforcement officers have the right to use some degree of physical coercion to complete an arrest. *Graham v. Connor,* 490 U.S. 386, 396 (1989). Under Ohio law, bailiffs in an Ohio Municipal Court perform the same services as those performed by a sheriff in the common pleas court. Ohio R.C. §1901.32(A)(7). In turn, a sheriff or deputy is empowered to have charge over a courthouse and keep order. Ohio R.C. §311.07. And every police officer of a municipal corporation within the territory of a municipal court – such as NPD Officer Trejo –

19

is an *ex officio* deputy bailiff of he court, and shall perform any duties that required of the judge or bailiff.  Ohio R.C. §1901.32(A)(5).  In sum, Deputy Axle, Bailiff Walker and Officer Trejo all were legally empowered to physically engage with Plaintiff when taking him into custody.  In this case, Bailiff Walker and Axle used hands-on force,  and Axle ineffectively deployed a taser to take Plaintiff into custody after he physically resisted arrest and attempted to flee the courtroom.  His defiant and dangerous opposition to being taken into custody is seen on the security video.

Claims of excessive force are analyzed under an objective-reasonableness standard which "requires careful attention to the facts and circumstances of each particular case." *Graham,* supra, 490 U.S. at 395-96.  Various factors including such things as whether the suspect poses a safety threat to the officers, the severity of the crime, and active resistance by the suspect "help inform. . .[the] ultimate inquiry." *Id.*  But in the end, the essential question is whether, considering the totality of the circumstances, the officer's use of force was justified and objectively reasonable. *Id.*  See also, *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Livermore v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007)).

This determination is judged from the perspective of a reasonable officer on the scene, not through the second-guessing lens of 20/20 hindsight. *Graham*, 490 U.S.at 396.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-97.  In making this judgment, courts must take care not to substitute "personal notions of proper police procedure for the instantaneous decision of the officer at the scene." *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.1992).  Rather, a court must adopt a "built-in measure of deference to

20

the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).  The Sixth Circuit has reminded:  "An officer's use of force does not become constitutionally unreasonable merely because, after the dust has settled, we [or the jury] can imagine a more reasonable way for responding." *Miller v. Village of Pinckney*, 365 F. App'x 652, 655 (6th Cir. 2010).

Whether force is constitutionally excessive is a question of law that must be decided by a court.  *Thomas v. City of Columbus*, 854 F.3d 361, 366 (6th Cir. 2017) ("[O]bjective reasonableness is a legal conclusion reserved for this court."); *Standifer v. Lacon*, 587 Fed. Appx. 919, 924 (6th Cir. 2014) ("the question of whether. . .[an officer's] conduct is objectively reasonable is a pure question of law for us, as judges, to decide.")  And, where there is video evidence capturing the events in question, the court must view the facts in the light depicted by the video.  *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) quoting *Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

### i.      Hands-on contact to enable handcuffing

Using hands-on contact to secure an individual in handcuffs is not an act of excessive force when an officer perceives that a subject is not cooperating with the handcuffing process or is a safety threat.  See e.g. *Earnest v. Genesee Cnty.*, 841 F. App'x 957, 960-61 (6th Cir. 2021) (officers were entitled to qualified immunity where the bodycam video conclusively showed that the plaintiff was resisting arrest, justifying a takedown and forcing plaintiff's hands behind his head so he could be cuffed); *Caie v. W. Bloomfield Twp.*, 485 Fed.Appx. 92, 96–97 (6th Cir. 2012) (force was reasonable when a suspect physically resisted handcuffs); *Thacker v. Lawrence Cty.*, 182 F. App'x 464, 472 (6th Cir. 2006) (when deputies attempted to arrest an upset, loud, and swearing individual who refused to calm down, they did not utilize excessive force in

21

reaching for the subject and trying to place him in handcuffs, and continued efforts to restrain the subject); *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002), (force was reasonable when the plaintiff acknowledged that he "twisted and turned some" when the police tried to handcuff him, and that the officers had difficulty restraining him.)

In this case, Plaintiff engaged in willful misbehavior and disobedience within the courtroom and the courthouse lobby, where members of the public were present. The safety threat was obvious.  As the confrontation occurred and Plaintiff was removed from the courtroom, this exchange took place:

| | |
|---|---|
| Judge Schuller: | Sorry Folks.  Folks we are safe in here, we are locked in here. |
| Female Voice: | It's still scary, Your Honor. |
| Judge Schuller: | I understand that. |
| Female Voice: | Can I open the door to let someone out. |
| Judge Schuller: | I would not.[45] |

Plaintiff's active resistance is evidenced in the video, beginning with a refusal to allow his wrists to be cuffed, use of his hands to push Deputy Axle in the chest, and his physical brawl and scuffle with Axle and Walker in the lobby.  While traffic charges generally are not severe crimes, disrupting the order of the Court truly is a serious matter which must be brought under control quickly to preserve the authority of the Court.

Defendants have been unable to locate controlling case law which would inform a courtroom deputy that he lacked authority to utilize hands-on force under these circumstances. Thus, Plaintiff cannot defeat either prong of the qualified immunity analysis as to this form of force.

---

[45] Exhibit A, p. 12.

ii.      Taser use.

Although it is not clear that Plaintiff is even challenging the use of the taser in this case, even so, its ineffective deployment does not amount to a constitutional violation.   An officer's use of a taser is permissible where a suspect poses an immediate threat in the form of "violent[] thrashing," an "attempt[] to hit officers[,] or [by] mak[ing] a display of force." *Kent v. Oakland Cnty.*, 810 F.3d 384, 391 (6th Cir. 2016); *see also Rudlaff*, 791 F.3d at 640.   Those factors indisputably exist here as all are shown in the court security video.

In *Easterling v. Rice*, No. 3:15-CV-257, 2016 U.S. Dist. LEXIS 21062, at *2-3 (S.D. Ohio Feb. 22, 2016), the Southern District of Ohio Court found qualified immunity applied and dismissed an excessive force claim brought against a courthouse law enforcement deputy who used a taser to enforce a District Court's order restricting the plaintiff's access to the courthouse premises.  That Court stated:

> The Court finds that it was reasonable for Deputy Rose, as a member of the Marshals Service, to believe that fulfilling his obligation in arresting Plaintiff during the August 4, 2014 incident was a lawful action in light of the established law specifying his duties as a Marshal and the information contained in the Order.

*Id.* at *2-3.  Here too, it was reasonable for Deputy Axle to believe that he was fulfilling his statutory duty and oath of office to maintain order when he deployed the taser, even though the probe was ineffective in this case.  At the least, no clearly established law informed him that use of the taser under these circumstances was unreasonable, and cases like *Easterling v. Rice* suggested it was proper.  He is entitled to qualified immunity for use of this form of force.

23

**d.      The Conspiracy claim asserted under 42 U.S.C. §1985(2) is invalid.**

The final individual capacity claim alleged in the Complaint is asserted in Count VII where Plaintiff alleges that Defendants were engaged in a conspiracy to prosecute Plaintiff.  The second clause of 42 U.S.C. § 1985(2) applies to conspiracies to obstruct justice in state court and provides:

> [O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing,  or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

A foundational requirement for this type of claim is that there must be allegations of racial or other class-based, invidiously discriminatory animus behind the conspirators' actions. See *Kush v. Rutledge*, 460 U.S. 719, 725 (1983); *Volunteer Med. Clinic, Inc. v. Operation Dallas*, 948 F.2d 218, 224 (6th Cir. 1994).  The factual allegations underlying this claim are set forth in Paragraph 14 of the Complaint.   But they do not state that the actions of any of the Defendants were motivated by Plaintiff's claimed association with a tribal organization, or because he is a member of a protected class.

Nor could Plaintiff plausibly have made such an allegation.  The transcript of the proceedings which took place on March 18, 2024 indicates that Plaintiff's seizure was ordered by Judge Schurer after he repeatedly identified himself as an "heir to a trust." At one point he referred to a tribal ID, but he did not inform the Judge that he was the member of any particular racial or ethnic group.   The courtroom video and audio make it plain that the actions of the Defendants were motivated by the Judge's order to take Plaintiff into custody due to his failure to acknowledge his *personal* identity, not because he claimed a particular class-based identity.

24

To prevail under § 1985(3), the statutory language demands that two or more persons "conspire" for the purpose of "impeding, hindering, obstructing, or defeating.. . the due course of justice."  A conspiracy claim must be pled with some degree of specificity; vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.  *Hill v. Pell*, No. 24-3268, 2025 U.S. App. LEXIS 1299, at *6-7 (6th Cir. Jan. 21, 2025) (internal citations omitted.) When allegations of a conspiracy are "wholly conclusory," they are appropriately dismissed on a Rule 12 motion.  *Hill,* supra, at *8.

Plaintiff's conspiracy allegations are "wholly conclusory," and lack the necessary specificity needed to support such a claim.  He alleges the conspiracy is evidenced by the fact that his arrest and "assault" were provoked by a "head nod" from the Judge to the bailiff.   But the video and transcript indicate that the Judge nodded her head only after she had engaged with Plaintiff who repeatedly refused to admit to his identity and approach the bench for arraignment, and only after she had given warnings that she would issue a bench warrant for his arrest.  This was not a coordinated, pre-planned effort to deprive Plaintiff of his right to obtain equal protection under the law.  Just the opposite.  Plaintiff spouted non-sensical sovereign citizen dogma to obfuscate his identity, and to prevent the Court from exercising its jurisdiction.  The Defendants sought to engage in the due course of justice; it was Plaintiff who sought to prevent it.  The fact that Plaintiff's case did not come for a hearing was because he made "fictitious claims which are not based in law but based in the fantasies of the sovereign citizen movement." *Pounds v. Michigan*, No. 1:25-cv-679, 2025 U.S. Dist. LEXIS 255614, at *18 (W.D. Mich. Nov. 24, 2025), recommendation adopted, 2025 U.S. Dist. Lexis 254814.

No plausible conspiracy claim exists, and it should be dismissed.

25

**D.      Argument in Support of Dismissal of the Official Capacity/*Monell* Claims.**

Henry County Sheriff Marc Ruskey and Napoleon Police Chief Edward Legg have both been named as Defendants in their official capacities.  An official capacity suit is generally "only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A suit against a defendant in his official capacity under § 1983 is equivalent to a suit against the local government entity. *Powers v. County of Lorain*, 259 F. App'x 818, 822, n.2 (6th Cir. 2008).

The claims against Police Chief Legg should be dismissed because they are redundant of the claims against the City of Napoleon.  The claims against Henry County, Ohio should be dismissed because that entity is not *sui juris*, *Estate of Fleenor v. Ottawa Cnty.*, 170 Ohio St. 3d 38, 2022-Ohio-3581, and if any exist, they are redundant of the official capacity claims against Sheriff Ruskey.  Thus, only the official capacity claim against the Sheriff and the claim against the City of Napoleon should remain for analysis.

At Paragraph 58 of the Complaint,[46]  Plaintiff alleges that the City of Napoleon and Henry County are liable under *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978). But in *Monell*, the Supreme Court made it clear that a public body may not be found liable under § 1983 "solely because it employs a tortfeasor." Id. at 691. In other words, Plaintiff may not rely on a theory of respondeat superior alone to establish liability against these Defendants. Rather, he must identify a policy, connect the policy to the City or County itself, and show that his purported constitutional injury was incurred because of the execution of that policy.  *Hall v. Navarre*, 118 F.4th 749, 756-57 (6th Cir. 2024), citing *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019).

---

[46] Rec. Doc. #2, Page ID # 46

The foregoing establishes that no County or City employee committed a constitutional violation in the first place, so the *Monell* claim must be dismissed.  See e.g. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014), citing *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir.2000).  A finding that no individual actor committed a constitutional violation usually also means that a policy and practice claim fails too.  *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 489–90 (6th Cir. 2020), citing *Crocker ex rel. Est. of Tarzwell v. County of Macomb*, 119 F. App'x 718, 724 (6th Cir. 2005) ("where there exists no constitutional violation. . . then there can be no constitutional violation on the part of a local government unit based on its failure to promulgate policies and to better train personnel.. . .")

Although the analysis could end there, Defendants challenge the plausibility and adequacy of Plaintiff's allegations that unconstitutional policies or customs exist on the part of the County and City.  Plaintiff makes a vague reference to alleged policies or customs involving "false warrants."   But the only warrant involved in this case is the bench warrant which, as explained above, was not created by any of the moving Defendants, but was issued by Judge Schuller.  When a thorough review of the pleadings fails to reveal allegations of a policy or custom of an official's claimed unconstitutional conduct, the Court must dismiss the complaint.  E.g. *Matthews v. Roberts,* No. 3:12-CV-828-H, 2013 U.S. Dist. LEXIS 59064, at *1 (W.D. Ky. Apr. 24, 2013).

Defendants also challenge the plausibility of Plaintiff's inaccurate references (with no legal citations) to *Chiaverini v. City of Napoleon* and *Timothy Clark v. City of Napoleon*.   The Court can take judicial notice that the *Chiaverini* case did not involve Henry County.  Although *Monell* claims were made against the City of Napoleon in that case, they were resolved in the City's favor.  Specifically, the District Court held that the City of Napoleon was entitled to

27

summary judgment on Chiaverini's § 1983 *Monell* claims because Chiaverini failed to identify any City policy or custom of deliberate indifference. *Chiaverini v. City of Napoleon*, No. 3:17-cv-2527, 2021 U.S. Dist. LEXIS 189323, at *15 (N.D. Ohio Sep. 30, 2021).  On appeal to the Sixth Circuit, the plaintiff abandoned the *Monell* claim.  *Chiaverini v. City of Napoleon*, No. 21-3996, 2023 U.S. App. LEXIS 865, at *9 n.6 (6th Cir. Jan. 11, 2023).  And, a subsequent appeal to the U.S. Supreme Court raised a probable cause issue involving a malicious prosecution claim asserted against police officers sued in their individual capacity; it was not a claim against the City.  The Supreme Court case had nothing to do with *Monell* liability. *Chiaverini v. City of Napoleon,* 602 U.S. 556 (2024).  A narrow issue remained after the Supreme Court appeal, but the defendant officers' renewed qualified immunity motion is pending.  Defense counsel has been unable to locate a case involving a Timothy Clark and either the City or County, in which *Monell* liability was found to exist based on either a lack of training claim, or a policy or custom claim.

Plaintiff obviously has no knowledge of, and thus has failed to plead, any particular factual allegations linking some custom or practice involved in the *Chiaverini* case, or the unspecified *Clark* situation with the facts in this one.  This is a far cry from setting forth plausible allegations that a custom or practice of the City or County caused Plaintiff to suffer a constitutional violation.

**E.**     **Conclusion**

Based on the foregoing, the Court should find that Plaintiff's Complaint, considered in light of the indisputable video evidence, and other public records and exhibits which are referred to in the complaint and are central to the claims, fails to state a plausible claim for relief against Defendants.   Accordingly, all claims against Defendants should be dismissed.

28

Respectfully submitted,

/s/ Teresa L. Grigsby
Teresa L. Grigsby (0030401)
Jennifer A. McHugh (0084842)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, OH  43604
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
tgrigsby@snlaw.com
jmchugh@snlaw.com

*Attorneys for Defendants Ryan Axle, Sean Walker, Marc Ruskey, Jacob Trejo, Edward Legg, Melissa K. Cotter,  City of Napoleon and Henry County*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August, 2026, a copy of the foregoing instrument was filed electronically with the Court's electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Teresa L. Grigsby
Teresa L. Grigsby

811855

29