# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Mark William Smith** | Case No. 3:26-cv-00606 |
| **PLAINTIFF,** | |
| v. | **JUDGE JAMES R. KNEPP II** **MAG. JUDGE DARRELL A. CLAY** |
| **ELIZABETH J. SCHULLER,** *et. al.,* | **PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| **DEFENDANTS.** | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

## INTRODUCTION

1. This case seeks to protect and vindicate fundamental constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. Through the statutory vehicle 42 U.S.C. § 1983.

2. Plaintiff Smith further seeks declaratory, preliminary, and permanent injunctive relief against all Defendants to stop them from arbitrarily exercising state power for no legitimate governmental reason but to interfere with fundamental liberty interests and chill First Amendment freedoms.

## BACKGROUND

3. On March 14, 2024, Plaintiff Mark Smith was driving a vehicle registered to his life partner when he was pulled over for excessive speed by Henry County Sheriff's Deputy Ryan Axle, in Henry County, Ohio.

4. Henry County Sheriff Deputy Ryan Axle conducted the traffic stop and issued a citation for speeding, no operator's license, and suspensions of operator's license.

5. During the course of the traffic stop, plaintiff provided Deputy Axle native american tribal identification, proper automobile registration, and proof of insurance identifying plaintiff and the automobile being operated.

6. Deputy Axle began a fishing expedition related to the Plaintiff's affiliation and association with his tribal organization.

7. Deputy Axle contacted via cell phone the Plaintiff's partner and inquired about his

organizational affiliation and whether he was authorized to have possession of the vehicle.

8. Deputy Axle took 54 minutes to perform a routine traffic stop.

9. Deputy Axle extended the traffic stop that concluded more than 40 minutes after the initial stop, which is a well accepted violation of the 4th Amendment pursuant to Rodriguez v. United States.

10. The opinion in Rodriguez held:

"...A routine traffic stop is more like a brief stop under *Terry* v. *Ohio*, 392 U. S. 1 , than an arrest, see, *e.g.*, *Arizona* v. *Johnson*, 555 U. S. 323 . Its tolerable duration is determined by the seizure's "mission," which is to address the traffic violation that warranted the stop, *Illinois* v. *Caballes*, 543 U. S. 405 and attend to related safety concerns. Authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. The Fourth Amendment may tolerate certain unrelated investigations that do not lengthen the roadside detention, *Johnson*, 555 U. S., at 327–328 (questioning); *Caballes*, 543 U. S., at 406, 408 (dog sniff), but a traffic stop "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a warning ticket, *id*., at 407.

Beyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. See *Delaware* v. *Prouse*, 440 U. S. 648 –659..."

11. Deputy Axle's 54 Minute traffic stop was a seizure of the Plaintiff Mark William Smith.

12. **In United States v. Clarence Bell, III** the Sixth Circuit reinforced the a pivotal reference point in understanding the boundaries of lawful traffic stops, "....affirming that the duration of Bell's detention was within constitutional limits...that minor extensions of a traffic stop, when reasonably related to its original purpose, do not inherently violate

the Fourth Amendment...."

13. Deputy Axle's extension of the traffic stop was an unconstitutional seizure of the Plaintiff and his property in violation of the Fourth Amendment.Plaintiff's rights are well established in law and every reasonable officer knows that extending the traffic stop without probable cause is unconstitutional. .

14. Plaintiff was issued a summons to appear in court on March 18, 2024 and was told by Deputy Axle that if he didn't appear, that a warrant would be issued for his arrest. The Plaintiff found this odd since no crime was committed, no one was injured and no property was damaged. It seemed an act under color of law and the appearance would be under duress and under threat of arrest.

15. On March 18, 2024, Plaintiff appeared at Napoleon Municipal Court for an arraignment. Since this was under duress and under threat of arrest, three witnesses attended. Also, notices were sent to the former Sheriff, prosecutor and Napoleon Municipal Court about Status and Constitutional violations. This prompted retaliation and conspiracy from the defendants.

16. During the course of entering his not guilty plea, Judge Schuller began arguing with the Plaintiff and threatening him with jail for exercising his First Amendment association and affiliation, and his right to free speech in a non threatening manner. Judge Schuller also stated that she would issue a warrant for not appearing while the Plaintiff was standing in Court.

17. While sorting through legal materials at the bar of the Court, Plaintiff was attacked by the former court room Deputy Sean Walker.

18. Plaintiff was then assaulted by Deputy Ryan Axle who was hiding in the lurch in a room adjacent to the judge.
19. Deputy Sean Walker and Sheriff Deputy Ryan Axle assaulted the Plaintiff with an unprovoked attack from a head nod by the Judge, alleging the Judge had issued a warrant for his arrest.
20. The act of initiating an unlawful arrest absent probable cause was non judicial.
21. The authorized excessive force to initiate the unlawful arrest made without probable cause is not acceptable in any jurisdiction of the United States.
22. No judge can put on a robe, shoot the defendant, and then claim immunity.
23. There is a line to be drawn that when an illegal seizure is conducted and that same seizure is planned, coordinated, and carried out by a person who happens to be appointed into a judicial position, and authorizes excessive force by her staff, bailiff, or any other person to act in violation of the rights of a defendant, they are not immune.
24. This was not a judicial act. This attack was planned, coordinated, and wholly unconstitutional.
25. Deputy Axle filed his tickets at approximately 8:45 a.m. He was not expected to court until 11:00 on an unrelated matter.
26. The Clerk's records indicate that a warrant was issued for Mark William Smith before court proceedings on March 18, 2024. There was no probable cause determination to issue a warrant for Smith.
27. On March 18, 2024, Smith arrived at Court prior to the Court proceedings commencing.

28. When Smith's case was called, he came forward and a discussion commenced at the bar.

29. Sean Walker, a direct employee working under the control of Judge Schuller, can be seen on video approaching and seizing the Plaintiff.

30. The video also supports Walker motioning to Deputy Axle to assist him.

31. Immediately prior to Walker approaching the Plaintiff, three persons in the front row, in a coordinated movement, simultaneously stand up, and move across the courtroom as if they knew what was coming next. Then, the video shows Sean Walker standing up to approach the Plaintiff.

32. Next, Deputy Axle comes from the lurch and attacks the Plaintiff.

33. The video shows Deputy Axle and Sean Walker slam the head of the Plaintiff through the court room doors.

34. The assault is in camera and is an excessive force that caused injury to the Plaintiff.

35. Plaintiff was arrested for a warrant and transferred to the custody of Napoleon Police Officer Jacob Trejo.

36. Officer Trejo transported the Plaintiff to the local hospital and then to the Correction Center of Northwest Ohio. Officer Trejo was told of the unlawful arrest, but because it is customary to accept the word of other law enforcement with no investigation, it is a Monell issue. It is not equal protection.

37. Plaintiff was booked into jail on a bench warrant.

38. The actions by state actors acting under color of law have caused violations of Plaintiff's Civil Rights that form the basis of this complaint pursuant to Title 42 U.S.C

§§ 1983, 1985. 1986, and 1988.

*Plaintiff*

39. Mark William Smith ("Plaintiff" or "Smith") is a resident of the State of Ohio and domiciles in Fulton County, who has been damaged by the Defendants, who have directly and proximately caused his physical injuries, seizure of his person and property while and deprivation of his Constitutional Rights.

**Plaintiff's Standing**

40. Plaintiff has standing to bring the claims for violations of his civil rights because he has direct and concrete injuries stemming from the conduct of the defendants described herein.

*Defendants*

41. **Defendant Elizabeth J. Schuller** is a natural person believed to domicile in Henry County, and the State of Ohio. At all times relevant to this complaint, the Defendant acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein.

42. **Defendant Sean Walker** is a natural person believed to domicile in Henry County, and the State of Ohio. At all times relevant to this complaint, the Defendant acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein.

43. **Defendant Ryan Axle** is a natural person believed to domicile in Henry County, and the State of Ohio. At all times relevant to this complaint, the Defendant acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein.

44. **Defendant Marc Rusky** is a natural person believed to domicile in Henry County, and the State of Ohio. At all times relevant to this complaint, the Defendant acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein.

45. **Defendant Jacob Trejo** is a natural person believed to domicile in Henry County, and the State of Ohio. At all times relevant to this complaint, the Defendant acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein.

46. **Defendant Edward Legg** is a natural person believed to domicile in Henry County, and the State of Ohio. At all times relevant to this complaint, the Defendant acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein.

47. **Defendant Melissa Cotter** is a natural person believed to domicile in Henry County, and the State of Ohio. At all times relevant to this complaint, the Defendant acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein.

48. **Defendant City of Napoleo**n is a municipal corporation organized under the laws of the State of Ohio. At all times relevant to this complaint, Defendant City of Napoleon

acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein

49. **Defendant Henry County** is organized under the laws of the State of Ohio. At all times relevant to this complaint, Defendant Henry County acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein

## SUBJECT MATTER JURISDICTION AND VENUE

### Federal Question

50. This Court has exclusive jurisdiction to determine Federal Question matters presented in this Complaint pursuant to 28 U.S.C. §§ 1331.

51. This case involves constitutional claims directly alleging violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States of America, including Federal Question jurisdiction.

52. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1334, 1343, 1367, 2201, and 2202.

53. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because substantially all events or omissions giving rise to Plaintiffs claims occurred in the Northern District of Ohio.

## PERSONAL JURISDICTION

54. Personal jurisdiction exists over all **Defendants** in the United States District Court for the Northern District of Ohio, Western Division.

55. Each Defendant has appeared in this District or resides in this District.

## FACTS ALLEGED FOR COMPLAINT

56. Plaintiff's claims detail the factual basis to substantiate the violations of his Civil Rights. Plaintiff further states that he has suffered harm as a direct and proximate result of the acts of the Defendants.

57. At all times relevant to this complaint, all Defendants acted under color of law, and its policies, customs, or practices were the moving force behind the violations of plaintiff's rights as described herein.

58. Plaintiff Smith alleges that on March 14, 2024, in Henry County, Ohio, Sheriff Deputy Ryan Axle deprived him of liberty to pursue baseless criminal fishing expedition in a discriminatory retaliation for exercising the constitutional right to freedom of speech and association. The extension of his initial traffic stop was a constitutional deprivation that resulted in a seizure of his person and property.

59. All claims related to this complaint have resulted in favorable termination that allow the Plaintiff to advance all claims contained herein in violation of his civil rights.

60. Plaintiff Smith further alleges that on March 18, 2024 he was subject to further baseless deprivation of his Constitutional Rights when he was threatened with arrest for his expression of non threatening free speech related to his initial court appearance for traffic offense.

61. Court entries provide that prior to appearing in court, Judge Elizabeth J. Schuller issued a warrant for the arrest of Plaintiff Smith to assure his appearance. EXHIBIT 1.

62. While appearing for court on minor traffic violations, Judge Elizabeth J. Schuller has

issued a bench warrant for the Defendant's arrest.

63. This was a clearly established violation of the Plaintiff Smith's rights and no reasonable officer could rely upon a fraudulent and baseless warrant issued by a non third party neutral or detached magistrate of judge.

64. Melissa K. Cotter, Clerk of the Napoleon Municipal Court entered the order on the docket and entry in Plaintiff Smith's case as demonstrated in EXHIBIT 1.

65. The same warrant was withdrawn while Plaintiff Smith was in Court on March 18, 2024. See EXHIBIT 1

66. In spite of the Warrant being withdrawn as provided in EXHIBIT 1, Deputy Sean Walker, without any legal basis, assaulted Plaintiff Smith while in court awaiting instruction from the Court.

67. Court Deputy Sean Walker was at all times relevant hereto a personal assistant to Judge Elizabeth J. Schuller. EXHIBIT 2

68. Courtroom Deputy Walker was acting in an executive position, not a judicial position when he assaulted Plaintiff Smith inside the courtroom.

69. Sheriff Deputy Ryan Axle had no good faith belief that an actual bench warrant was issued and no reasonable officer would think otherwise.

70. In spite of this, Deputy Ryan Axle authored a report that has not been revised providing for the facts alleged above. Specifically, Deputy Ryan Axle authored a report that he arrested Plaintiff Smith for a bench warrant. EXHIBIT 3

71. Napoleon Police Officer Jacob Trejo authored an official report that he transported Plaintiff Mark Smith to the Corrections Center of Northwest Ohio and booked him

into the facility on a bench warrant. EXHIBIT 4

72. Melissa K. Cotter, Clerk of Court entered the Bench Warrant in EXHIBITS 1, 2, and 3. She was acting under color of law that deprived the Plaintiff of his clearly established Constitutional Right that no person shall be subject to a seizure absent probable cause. No person swore an affidavit for probable cause and she did not perform the requisite inquiry as a detached third party magistrate to confirm the probable cause requirement. It is established law that absent probable cause issued by a third party neutral that no reliance thereon is valid. United States v. Leon.

73. Judge Elizabeth J. Schuller was not acting in a judicial capacity, but rather an executive capacity when she provided authority to her courtroom Deputy, Sean Walker, to assault the Plaintiff.

74. All actors were acting under color of law and Plaintiff will show that the defendants committed numerous violations pursuant to Title 42 U.S.C §§ 1983, 1985, 1986.

75. The City of Napoleon and the County of Henry are liable for Plaintiff's Civil Rights Violations pursuant to 42 U.S.C §§ 1983, 1985, 1986 for Monell liability for their official written policies, customs, practices, training policies, failure to train, supervisory policies and failure to supervise, all of which was done under color of law and has specifically deprived Plaintiff of his Constitutional Rights pursuant to the First, Fourth, and Fourteenth Amendments to the United States Constitution.

76. In addition, the facts show that the named defendants , through their decision makers, policies, customs, and lack of training and lack of oversight provide complete indifference to the civil rights of the Plaintiff.

77. The Defendants conduct, individually and collectively, violate Plaintiff's Civil Rights pursuant to Title 42 U.S.C §§ 1983, 1985, 1986.

78. Defendants will attempt to claim some form of immunity, including absolute immunity and qualified immunity. These defenses are not available because as the Complaint provides, the acts of the Defendants were outside of the protection immunity.

79. Specifically, Judge Elizabeth J. Schuller does not have immunity because in an act to deprive the Plaintiff of his First Amendment and Fourteenth Amendment Rights, she conspired with her deputy to arrest him and detain him to assert authority and intimidate the Plaintiff. This act is not a judicial function but an exercise of arrest constituting an executive function.

80. Deputy Ryan Axle does not have qualified immunity because he could not rely upon fabricated bench warrant to assert an arrest of Plaintiff Smith.

81. Courtroom Deputy Sean Walker can not assert qualified immunity because he was acting in an executive function when he was attempting to arrest the Plaintiff on fraudulent bogus charges that he fabricated with Judge Elizabeth J. Schuler to violate the fundamental rights of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

82. Qualified immunity protects police from personal liability unless they violate a person's clearly established constitutional or statutory rights. Kisela v. Hughes 138 S. Ct. 1148, 1152(2018).

83. Plaintiff Smith has met the burden to support that his rights are clearly established.

## COUNT I

## FOURTH AMENDMENT- UNLAWFUL SEIZURE
## VIOLATION TITLE 42 U.S.C. §1983

84. The allegations of paragraphs 1 through 83 are incorporated herein by reference.

85. The Plaintiff, as detailed above, has been retaliated for his speech in violation of the First Amendment.

86. Defendants Schuller, Walker, Axle, and Cotter have caused an unlawful seizure of Plaintiff Smith with their retaliatory and deliberate acts to violate his well established Constitutional Rights and absent probable cause.

87. Defendants are considered government officials, and they were acting under color of law.

88. Defendants initiated a seizure without probable cause.

89. Plaintiff Smith's case ended in his favor since there was not actually a bench warrant issued, there were no criminal proceedings related to a bench warrant.

90. The seizure of the Plaintiff Smith terminated in his favor and that the seizure was objectively unreasonable under the totality of circumstances

## COUNT II
## FOURTH AMENDMENT- FALSE ARREST
## VIOLATION TITLE 42 U.S.C. §1983

91. The allegations of paragraphs 1 through 90 are incorporated herein by reference.

92. Defendants Schuller, Walker, Axle, Cotter, and Trejo acting under color of law intentionally confined the plaintiff without consent.

93. Defendants Schuller, Walker, Axle, Cotter, and Trejo acting under color of law, and without privilege to do so or probable cause, intentionally confined and arrested the Plaintiff, Mark Smith.

94. Defendants knew that the arrest was not legally justified and specifically that the Defendants lacked reasonably trustworthy information that a crime was committed.

95. Plaintiff Mark Smith's cases have terminated in his favor.

## COUNT III
## FOURTH AMENDMENT- FALSE IMPRISONMENT
## VIOLATION TITLE 42 U.S.C. §1983

96. The allegations of paragraphs 1 through 95 are incorporated herein by reference.

97. Defendants Schuller, Walker, Axle, Cotter, and Trejo acting under color of law intentionally confined the plaintiff without consent.

98. Defendants Schuller, Walker, Axle, Cotter, and Trejo acting under color of law, and without privilege to do so or probable cause, intentionally confined and imprisoned Plaintiff, Mark Smith by confining him to the Corrections Center of Northwest Ohio on March 18, 2024.

99. Defendants knew that the arrest and imprisonment was not legally justified and specifically that the Defendants lacked reasonably trustworthy information that a crime was committed.

100. Plaintiff Mark Smith's cases have terminated in his favor.

## COUNT IV
## FOURTEENTH AMENDMENT- FALSE IMPRISONMENT
## VIOLATION TITLE 42 U.S.C. §1983

101. The allegations of paragraphs 1 through 100 are incorporated herein by reference.

102. Defendants Schuller, Walker, Axle, Cotter, and Trejo acting under color of law intentionally confined the plaintiff without consent.

103. Defendants Schuller, Walker, Axle, Cotter, and Trejo acting under color of law, and without privilege to do so or probable cause, intentionally confined and imprisoned Plaintiff, Mark Smith by confining him to the Corrections Center of Northwest Ohio on March 18, 2024.

104. Defendants knew that the arrest and imprisonment was not legally justified and specifically that the Defendants lacked reasonably trustworthy information that a crime was committed.

105. Plaintiff Mark Smith's cases have terminated in his favor.

**COUNT V**
**FOURTH AMENDMENT- MALICIOUS PROSECUTION**
**VIOLATION TITLE 42 U.S.C. §1983**

106. The allegations of paragraphs 1 through 105 are incorporated herein by reference.

107. Defendants Schuller, Walker, Axle, and Cotter while acting under color of law initiated baseless claims without any reasonable basis or honest belief that Plaintiff Mark Smith committed a crime.

108. Defendants Schuller, Walker, Axle, and Cotter acted with Malice against the Plaintiff.

109. Plaintiff's alleged crime ended with no charges being filed based upon the alleged

bench warrant and other charges have been favorably terminated as required pursuant to Chiavernin v. Napoleon.

110. The prosecution of Plaintiff Mark Smith has resulted in an unreasonable seizure and deprivation of liberty consistent in violation of the Fourth Amendment.

## COUNT VI

## FOURTH AMENDMENT THROUGH FOURTEENTH
## EXCESSIVE FORCE
## VIOLATION TITLE 42 U.S.C. §1983

111. The allegations of paragraphs 1 through 110 are incorporated herein by reference.

112. Defendants Schuller, Walker, and Axle while acting under color of law initiated baseless claims without any reasonable basis or honest belief that Plaintiff Mark Smith committed a crime.

113. The Defendants used excessive force in the baseless arrest and detention of Plaintiff Mark Smith and caused him personal injury.

114. The arrest and use of excessive force causing blunt force head trauma was a violation of the fourth amendment through the fourteenth amendment of the United States Constitution.

115. Defendant use of force was unreasonable and no reasonable office would have used this level of force.

**COUNT VII**
**CONSPIRACY TO**
**VIOLATION TITLE 42 U.S.C. §1985(2)**
**1985(2) Obstructing justice; intimidating party, witness, or juror**

116. The allegations of paragraphs 1 through 115 are incorporated herein by reference.

117. TITLE 42 U.S.C. §1985(2) provides in the first section:

a. If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror;

118. Defendants are liable for Counts I-VII for their conspiracy to prosecute Plaintiff.

119. Plaintiff has suffered direct injury due to the conspiracy of defendants named herein.

**COUNT VIII**
**MONELL CLAIM- CITY OF NAPOLEON**

120. The allegations of paragraphs 1 through 119 are incorporated herein by reference.

121. The claims above are subject to Monell Claims from the following:

122. All claims were custom and/or a failure to train

123. The City of Napoleon and the County of Henry have known about the failure to train and the custom of the City and the County in violation of Monell Claims from past cases including Timothy Clark v. Napoleon and Chiaverini v. Napoleon.

124. The Policy was an Informal Custom that Plaintiff has established by:

A. Pattern, practice, custom, or informal policy alleged violations of Constitutional Rights including the creating of false warrants- such as indicated here.

B. This widespread recurring practice is so permanent and settled that it constitutes formal policy.

C. There is an adhering to that practice caused constitutional violation

125. There was a Failure to Train that creates Monell liability because there was:

A. Inadequate training of municipal employees including Schuller, Cotter, and Walker.

B. Their lack of training is inadequate training and it has caused constitutional injury .

C. The City of Napoleon has been deliberately indifferent to constitutional rights of Plaintiff Smith.

126. Finally there is Monell Liability for Failure-to-Supervise because there was:

A. Inadequate supervision of municipal employees allowing the continued issuance of bogus warrants not founded upon probable cause.

B. This inadequate supervision has caused constitutional injury to Plaintiff Smith; and,

C. Municipality was deliberately indifferent to constitutional rights injured.

## COUNT IX
## MONELL CLAIM- HENRY COUNTY

127. The allegations of paragraphs 1 through 126 are incorporated herein by reference.

128. The claims above are subject to Monell Claims from the following:

129. All claims were custom and/or a failure to train

130. The City of Napoleon and the County of Henry have known about the failure to train and the custom of the City and the County in violation of Monell Claims from past cases including Timothy Clark v. Napoleon and Chiaverini v. Napoleon.

131. The Policy was an Informal Custom that Plaintiff has established by:

A. Pattern, practice, custom, or informal policy alleged violations of Constitutional Rights including the creation of false warrants- such as indicated here.

B. This widespread recurring practice is so permanent and settled that it constitutes formal policy.

C. There is an adhering to that practice caused constitutional violation

132. There was a Failure to Train that creates Monell liability because there was:

A. Inadequate training of Henry County Sheriff Ryan Axle.

B. The lack of training is inadequate training and it has caused constitutional injury .

C. Henry Country has been deliberately indifferent to constitutional rights of Plaintiff Smith.

133. Finally there is Monell Liability for Failure-to-Supervise because there was:

A. Inadequate supervision of municipal employees allowing the continued issuance of bogus warrants not founded upon probable cause.

B. This inadequate supervision has caused constitutional injury to Plaintiff Smith; and,

C. The County was deliberately indifferent to constitutional rights injury.

## CONCLUSION

WHEREFORE, Plaintiff hereby demands damages and relief as follows for all claims:

A) to declare that Defendants violated Plaintiff Smith's fundamental constitutional rights as set forth in this Complaint;

B) to permanently enjoin Defendants Minard from unlawfully detaining and seizing persons and motor vehicles, in retaliation for exercising constitutionally protected First Amendment freedoms as set forth in this Complaint;

C) to award Plaintiff Smith nominal damages, actual damages, compensatory damages, and punitive damages against Defendants;

D) to award Plaintiff Smith reasonable attorney fees, costs, and expenses under 42 U.S.C. § 1988 and other applicable law; and,

E) to grant such other and further relief as this court should find just and proper.

Dated this th day of September 14, 2026

AR Mark-William: Smith

MARK SMITH